Exhibit B1

**2018-21484 / Court: 295**

CAUSE NO. _____

| | | |
|---|---|---|
| KIRK L. KERN and JACQUELINE KERN, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## ORIGINAL PETITION

COMES NOW KIRK L. KERN and JACQUELINE KERN ("Plaintiffs"), filing this Original Petition ("Petition") against WELLS FARGO BANK, N.A. ("Wells Fargo" or "Defendant") alleging claims related to the servicing and enforcement of the Plaintiffs' mortgage loan agreement that Wells Fargo seeks to foreclose next Tuesday, April 3, 2018, in Cause No. 2017-20118, *In Re: Order for Foreclosure Concerning 16219 Champion Dr., Spring, TX 77379-6710*, in the 80th District Court, Harris County, Texas, (the "Foreclosure Action"). The Foreclosure Action is "automatically stayed" now because Plaintiffs filed this Petition,[1] and "any foreclosure sale of the property is void."[2] Plaintiffs allege the following, based on personal knowledge as to Plaintiffs and Plaintiffs' own acts, and on information and belief as to all other matters, and would respectfully show the Court as follows:

### I. DISCOVERY CONTROL PLAN

1. Plaintiffs intend to conduct discovery under Level Two and affirmatively plead that this suit is not governed by the expedited-actions process in Tex. R. Civ. P. 169 because Plaintiffs seek monetary relief over $100,000. *See* Tex. R. Civ. P. 190.3.

---

[1] Tex. R. Civ. P. 736.11(a).

[2] Tex. R. Civ. P. 736.11(d).

## II. CLAIM FOR RELIEF

2. This is a consumer fraud claim against Wells Fargo bank related to its mortgage servicing activities. Rule 47 of the Texas Rules of Civil Procedure *requires* Plaintiffs to provide a written statement regarding the amount of monetary relief sought. Discovery is ongoing and must be completed to properly assess the full nature and scope of Plaintiffs' damages. Plaintiffs request a jury to determine the fair amount of compensation for Plaintiffs' damages; and places this decision regarding the full amount of compensation to be awarded in the jury's hands. Plaintiffs have suffered a loss in the past equity of their home, as well as the loss of future equity in their home, plus lost earnings. Accordingly, pursuant to Tex. R. Civ. P. 47(c)(5), Plaintiffs seek monetary relief over $1,000,000 to cover their damages. The economic damage incurred by Plaintiffs might be less than $1,000,000, but Plaintiffs believe the other damages, interest, and penalties will exceed $1,000,000.

## III. PARTIES

3. Plaintiffs KIRK L. KERN and JACQUELINE KERN are individual residents of Harris County, Texas residing at 16219 Champion Dr., Spring, TX 77379. Defendant WELLS FARGO is the mortgage servicer of Plaintiffs' mortgage loan.

4. Because Plaintiffs and Wells Fargo have previously appeared in the pending foreclosure action filed by Wells Fargo (Cause No. 2017-20118, *In Re: Order for Foreclosure Concerning 16219 Champion Dr., Spring, TX 77379-6710*; in the 80th District Court, Harris County, Texas) ("Foreclosure Action"), personal service of this Original Petition is not required.

5. In compliance with Tex. R. Civ. P. 21, 21a, and 736.11, Wells Fargo may be served with this Original Petition by serving Wells Fargo's attorney of record in the Foreclosure Action:

Certified Document Number: 79265485 - Page 2 of 30

Elizabeth Hayes (TBN 24069001)
elizabeth.hayes@bonialpc.com
Michael Hupf (TBN 24102799)
michael.hupf@bonialpc.com
BONIAL & ASSOCIATES, P.C. f/k/a BUCKLEY MADOLE, P.C.
P.O. Box 9013
Addison, Texas 75001
(972) 643-6600 Office
(877) 897-3991 Toll Free
(972) 643-6699 Facsimile

6.     Plaintiffs have simultaneously provided a copy of this Petition to Wells Fargo's attorney of record (above).

## IV.    JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction of this suit because the amount in controversy exceeds this Court's minimum jurisdictional requirements. TEX. GOV'T. CODE § 24.007. Venue is mandatory in Harris County, Texas because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County, Texas. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1).

## V.    VICARIOUS LIABILITY

8.     All allegations herein of acts or omissions by Wells Fargo include, but are not limited to, acts and omissions of Wells Fargo' officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners; and that such acts and omissions were committed and made with express and/or implied authority of Wells Fargo, or were ratified or otherwise approved by Wells Fargo; or that such acts or omissions were made in the routine normal course and scope of their agency and employment as Wells Fargo's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners.

Certified Document Number: 79265485 - Page 3 of 30

ORIGINAL PETITION

## VI.    CONDITIONS PRECEDENT

9.    All conditions precedent have been performed or have occurred.

10.    Plaintiffs contest Wells Fargo's right to foreclose on the property located at 16219 Champion Drive, Spring, Texas 77379 ("Plaintiffs' Property") in the Foreclosure Action. Plaintiffs are alleging claims related to the servicing and enforcement of the Plaintiffs' mortgage loan agreement that Wells Fargo seeks to foreclose next Tuesday, April 3, 2018, in the Foreclosure Action.

## VII.    FACTUAL ALLEGATIONS

11.    Plaintiffs, KIRK L. KERN and JACQUELINE KERN, are citizens of Harris County, Texas, residing at 16219 Champion Drive, Spring, Texas 77379.

12.    In December of 1997, Plaintiffs executed a mortgage and note with defendant Wells Fargo for their home located at 16219 Champion Drive, Spring, Texas 77379.

13.    Wells Fargo began servicing the Plaintiffs' mortgage.

14.    In November of 2002, Plaintiffs refinanced their mortgage with Aurora.

15.    In June of 2005, Plaintiffs converted their mortgage into a home-equity loan with Wells Fargo; and the servicing rights on Plaintiffs' mortgage were transferred to Countrywide.

16.    In 2008, Plaintiffs began experiencing a financial hardship, due in part to the state of the economy, and fell behind on monthly mortgage payments to defendant Wells Fargo.

17.    On April 1, 2008, Wells Fargo sent a letter to Plaintiffs about a "Work Out process" that would help Plaintiffs "determine the best options" for their situation.[3]

---

[3] Exhibit 2.

Certified Document Number: 79265485 - Page 4 of 30

18.    On March 18, 2009, Plaintiffs submitted all the requested information to Wells Fargo via fax.[4] The fax also included a letter from Plaintiffs to Jennifer Medifie complaining about Wells Fargo taking payments from Plaintiffs' bank account – but not applying the payments to Plaintiffs' mortgage balance – and other frustrations about resending documentation to different departments.[5]

19.    In June of 2009, Plaintiffs' agreed to a "temporary modification" of their home equity mortgage loan with Wells Fargo from June 3, 2009 to April 3, 2010.

20.    Plaintiffs' successfully completed the "temporary modification" trial period from June 3, 2009 to April 3, 2010 making all required monthly payments on their mortgage. Plaintiffs' communicated with employees of Wells Fargo during this timeframe, including Shana L. Grow (specialist), Jennifer Medifie (specialist), and Janine (specialist).

21.    On March 16, 2010, Michael J. Heid, as Executive Vice President of Wells Fargo, signed an amended Servicer Participation Agreement ("SPA") with the U.S. Government.[6]

22.    On July 12, 2011, Wells Fargo sent a letter notifying Plaintiffs of "IMPORTANT NEWS" of their eligibility for "**PAYMENT RELIEF**" on their mortgage account.[7] The letter says Wells Fargo "may give you: a lower interest rate, a lower payment amount, an extension of the time you have to repay your loan, or a combination of the above."[8]

23.    On July 21, 2011, Plaintiffs received a letter from the Wells Fargo "Home Preservation Team" requesting Plaintiffs to apply for the Home Affordable Modification Program

---

[4] Exhibit 3.

[5] Exhibit 3.

[6] *See* Exhibit 1 (amended SPA).

[7] Exhibit 5.

[8] Exhibit 5.

ORIGINAL PETITION

("HAMP").[9] The letter further states that Wells Fargo will **"work with you,"** is "ready to help you," and they "want to make modifying your home equity account as easy as possible."[10]

24.     On one representation in the letter, Wells Fargo states that the "home preservation specialist" assigned to help Plaintiffs will "do everything possible to help you avoid the foreclosure sale of your home."[11]

25.     On August 8, 2011, Wells Fargo assigned "home preservation specialist" Randy Helgeson to "help" Plaintiffs and be the "primary point of contact" for Plaintiffs concerning their home-equity loan (also referred to as the "mortgage loan").[12] The only contact information provided for Randy Helgeson in the letter was a toll-free phone number (866) 319-0855 Ext: 80566 and fax number (866) 834-7850.[13] Randy Helgeson was only available from Tuesday to Saturday from 6:00am-3:00pm PST.[14]

26.     Six-weeks later on September 19, 2011, Wells Fargo assigned Kamaria Taylor to be the "new Wells Fargo home preservation specialist" for Plaintiffs concerning their mortgage loan.[15] Kamaria Taylor was the new "primary point of contact" assigned to "work closely" with Plaintiffs to "help" them through "every step of the process."[16] Kamaria Taylor had the same phone number (866) 319-0855 but a different extension (Ext: 80439), the same fax number, her e-mail

---

[9] Exhibit 6.

[10] Exhibit 6.

[11] Exhibit 4.

[12] Exhibit 7.

[13] Exhibit 7.

[14] Exhibit 7.

[15] Exhibit 8.

[16] Exhibit 8.

Certified Document Number: 79265485 - Page 6 of 30

address (kamaria.j.taylor@wellsfargo.com), and she was only available from Tuesday to Saturday from 6:00am-3:00pm PST.[17]

27.     After another six weeks, in November of 2011, Wells Fargo assigned Christine Rosencrance to be the new Wells Fargo home preservation specialist for Plaintiffs concerning their mortgage loan.[18] Christine Rosencrance was the new primary point of contact assigned to Plaintiffs; and she had a completely different phone number (866) 970-7834 and no extension, no fax number, and she was available Monday-Thursday 6AM-8PM, Friday 6AM-5PM, Saturday 6AM-3PM, and Sunday 11AM-8PM Pacific Time.[19]

28.     On December 31, 2012, Wells Fargo assigned Maria Del Pilar Valverde to be the "new Wells Fargo home preservation specialist" for Plaintiffs concerning their mortgage loan.[20] Maria Del Pilar Valverde was the new "primary point of contact" assigned to "work closely" with Plaintiffs and "help" them through "every step of the process."[21] Maria Del Pilar Valverde had a completely different phone number (877) 398-4088, a different phone extension (Ext: 80415), the same fax number, different e-mail address (mariadelpilar.valverde@wellsfargo.com), and she was only available from Tuesday to Saturday from 6:00am-3:00pm PST.[22]

29.     On August 5, 2013, Wells Fargo assigned Jing Freitag to be the "new Wells Fargo home preservation specialist" for Plaintiffs concerning their mortgage loan.[23] Jing Freitag was the new "primary point of contact" assigned to "work closely" with Plaintiffs and "help" them through

---

[17] Exhibit 8.

[18] Exhibit 8.5.

[19] Exhibit 8.5.

[20] Exhibit 9.

[21] Exhibit 9.

[22] Exhibit 9.

[23] Exhibit 10.

Certified Document Number: 79265485 - Page 7 of 30

"every step of the process."[24] Jing Freitag had a completely different phone number (866) 623-1022, a different phone extension (Ext: 80550), the same fax number, different e-mail address (jing.freitag@wellsfargo.com), and she was only available from Monday-Friday 8:00am-5:00pm Pacific Time.[25]

30.     On October 3, 2013, Plaintiffs received a letter from Wells Fargo requesting Plaintiffs apply for the Home Affordable Foreclosure Alternatives program ("HAFA").[26] The letter further states that Wells Fargo wants to "help you prevent foreclosure."[27]

31.     Four days later on October 7, 2013, Wells Fargo assigned Nicole Langel to be the "new Wells Fargo home preservation specialist" for Plaintiffs concerning their mortgage loan.[28] Nicole Langel was the new "primary point of contact" assigned to "work closely" with Plaintiffs and "help" them through "every step of the process."[29] Nicole Langel had a completely different phone number (888) 508-8811, a different phone extension (Ext: 48890), different fax number (866) 593-3578, no e-mail address, and she was only available on Monday-Thursday 10:00am-7:00pm and Friday 8:00am-5:00pm Central Time.[30]

---

[24] Exhibit 10.
[25] Exhibit 10.
[26] Exhibit 11.
[27] Exhibit 11.
[28] Exhibit 12.
[29] Exhibit 12.
[30] Exhibit 12.

Certified Document Number: 79265485 - Page 8 of 30

32.     On October 18, 2013, Wells Fargo denied Plaintiffs' HAFA application.[31] The denial letter said Plaintiffs "do not meet the requirements of the HAFA" because Plaintiffs "did not provide all the information needed within the required time frame."[32]

33.     On December 20, 2013, Wells Fargo assigned Christina Landers to be the "new Wells Fargo home preservation specialist" for Plaintiffs concerning their mortgage loan.[33] Christina Landers was the new "primary point of contact" assigned to "work closely" with Plaintiffs and "help" them through "every step of the process."[34] Christina Landers had a completely different phone number (866) 992-0948, a different phone extension (Ext: 80530), the same fax number, no e-mail address, and she was only available Monday through Thursday 7:00am-7:00pm, Friday 7:00am-5:00pm, and Saturday 8:00am-5:00pm Central Time.[35]

34.     On November 9, 2016, Plaintiffs received a letter from the Wells Fargo Home Preservation Team acknowledging receipt of Plaintiffs' documentation.[36]

35.     On October 19, 2017, Plaintiffs received a "disaster relief" letter from Wells Fargo authorizing a 90-day grace period for mortgage loan payments.[37]

36.     On February 16, 2018, Wells Fargo sent a disclosure letter to Plaintiffs concerning the Servicemembers Civil Relief Act.[38]

---

[31] Exhibit 13.

[32] Exhibit 13.

[33] Exhibit 14.

[34] Exhibit 14.

[35] Exhibit 14.

[36] Exhibit 15.

[37] Exhibit 16.

[38] Exhibit 17.

Certified Document Number: 79265485 - Page 9 of 30

37.     On March 15, 2018, Plaintiffs received an update letter from Wells Fargo about Plaintiffs' "inquiry about account number XXXXXX898.[39]

## A.     False Statements of Fact Concerning HAMP Eligibility

38.     Wells Fargo representatives advised Plaintiffs to refrain from making their regular mortgage payments. Wells Fargo specifically instructed Plaintiffs to "stop making [their] regular mortgage payments for three months" in order to be eligible for a modification. Although the Plaintiffs did not know it until they retained their attorneys, this statement was false and Wells Fargo knew this statement was false, as default was not required for HAMP eligibility. Wells Fargo representatives omitted the fact that eligibility was available for HAMP to borrowers if default was reasonably foreseeable.

39.     Wells Fargo representatives knew the statement was false when made and intentionally omitted that only imminent default was required for HAMP eligibility. The statement and omission was made to induce the Plaintiffs reliance on it. The statements were specifically designed by Wells Fargo to set Plaintiffs up for foreclosure. Plaintiffs believed they were required to be in default on their mortgage and were misled into believing the false statement.

40.     Relying on the false statement and omission, Plaintiffs refrained from making their regular mortgage payments and fell into default status, as evidenced by the debt validation notice Wells Fargo recently sent to Plaintiffs stating Plaintiff must pay over $100,000 within 30 days. This notice was the initial step of the foreclosure process and a direct result of Wells Fargo's misrepresentations that default was required to be eligible for a mortgage modification. Using the Plaintiffs' default status as an excuse, Wells Fargo refused to apply Plaintiffs' HAMP trial

---

[39] Exhibit 18.

Certified Document Number: 79265485 - Page 10 of 30

payments to Plaintiffs' account. Wells Fargo's actions resulted in further default and foreclosure of Plaintiffs' home.

41.     As a direct result, Plaintiffs suffered damages when they subsequently made trial payments as instructed by Wells Fargo, which the bank refused to apply to their account, resulting in further default and foreclosure of their home.

**B.     False Statements of Fact Concerning Plaintiffs' HAMP Application**

42.     In July of 2011, Wells Fargo provided Plaintiffs with a HAMP application, and they properly completed the application and returned it to Wells Fargo with the requested supporting financial documents. Wells Fargo employee Randy Helgeson helped Plaintiffs complete the HAMP application to submit.

43.     However, as part of Wells Fargo's fraudulent scheme once the application was submitted, on or about September of 2011, Plaintiffs were falsely informed by Wells Fargo employee Kamaria Taylor that Wells Fargo "didn't have copies" of the documentation Plaintiffs had submitted with their application and told them to resubmit the documentation. The same or similar statements were made on subsequent phone calls with multiple Wells Fargo employees.

44.     From September 2011 through 2013, Plaintiffs mailed, and re-mailed, faxed, and re-faxed, their documents to Wells Fargo on numerous different occasions.

45.     Plaintiffs re-mailed the requested financial documentation after Wells Fargo employee Kamaria Taylor falsely informed them that their application and financial documents were "incomplete." Wells Fargo employees Randy Helgeson, Kamaria Taylor, Christine Rosencrance, Maria Del Pilar Valverde, Jing Freitag, Nicole Langel, Christina Landers, and other Wells Fargo employees knew these representations were false and this practice was policy and procedure at Wells Fargo.

Certified Document Number: 79265485 - Page 11 of 30

46.     These false statements were made to Plaintiffs several times between July 12, 2011 and December 31, 2013 by Wells Fargo employees, including Randy Helgeson, Kamaria Taylor, Christine Rosencrance, Maria Del Pilar Valverde, Jing Freitag, Nicole Langel, Christina Landers, and others, not for the purpose of processing Plaintiff's application in good faith, but instead for the specific purpose of frustrating the HAMP application process to ensure a modification was ultimately declined, resulting in foreclosure.

47.     Wells Fargo employees knew these statements were false, and some employees may have been awarded cash incentives as well as restaurant and retail gift cards for meeting quotas for declining modification applications in a given day or week.

48.     Plaintiffs were routinely assigned new account representatives unfamiliar with the previous representative's work and were forced to resubmit the application. Many times between July 12, 2011 and December 31, 2013, Wells Fargo employees informed Plaintiffs that Wells Fargo had no information regarding their HAMP application. Specifically, Plaintiffs called Wells Fargo to check the status of their modification and a Wells Fargo employee told Plaintiffs she could not ensure the next representative would be aware of what the previous one had discussed with Plaintiffs.

49.     Plaintiffs believed these statements were true, relied on them and as a result, unnecessarily resubmitted their application and supporting information via U.S. Mail, FedEx, and/or fax several more times. As a direct result, Plaintiffs were damaged and suffered a loss of the costs and time spent sending and resending their HAMP application on multiple occasions when Wells Fargo had no intention of reviewing it.

50.     Plaintiffs did not know, and could not have reasonably discovered, that these statements were false until they retained their attorneys in this matter.

Certified Document Number: 79265485 - Page 12 of 30

51.     By making these misrepresentations, Wells Fargo profited avoiding the administrative costs of a good faith processing of Plaintiffs' modification application as was required under the SPA Wells Fargo executed with the Federal Government.[40]

## C.     False Statements of Fact of Approval and Request for Trial Payments

52.     In 2009, Wells Fargo sent Plaintiffs a letter approving a temporary modification of their mortgage with reduced "trial payments" pursuant to the Federal Government's HAMP process to begin June 3, 2009 to April 3, 2010. This statement was false as the application wasn't actually approved. Instead, Wells Fargo had no intention of approving the application and this fact was fraudulently omitted from the Plaintiffs.

53.     This false statement of fact and intentional omission was intended to cause Plaintiffs to make trial payments to Wells Fargo, not for the purpose of compliance with HAMP or processing their HAMP application, but to cause Plaintiffs to send funds so Wells Fargo could retain those funds in an unapplied account for profit after foreclosure or apply the funds to fraudulent inspection and other fees the bank charged.

54.     It was and is a routine business practice of big banks to place "trial period payments...into an unapplied account until" the bank makes a decision on the borrowers' HAMP application. *See* July 20, 2016 Deposition of BOA Representative, Lonnie S. Mills, pursuant to Rule 30(b)6), *Noelia Ramirez v. Bank of America, N.A.*, Hillsborough County File No.: 16-CA-722. Wells Fargo employees also fraudulently omitted this fact when requesting the Plaintiffs make trial payments.

---

[40] *See* Exhibit 1 (amended SPA), at § 2A.

Certified Document Number: 79265485 - Page 13 of 30

55. Plaintiffs did not know and could not have reasonably discovered that the statements herein were false and/or that their trial payments were not applied to their account until they retained their attorneys in this matter.

56. Relying on Wells Fargo's misrepresentations and omissions, Plaintiffs made all monthly trial payments in 2009 and 2010, hoping to save their home.

57. While timely making their trial payments as instructed by Wells Fargo, Plaintiffs continued to receive correspondence from Wells Fargo indicating that their modification documents were incomplete. Specifically, while making their TPP payments, Wells Fargo falsely informed Plaintiffs their documents were incomplete. Wells Fargo knew this statement was false, and Plaintiffs relied on the misrepresentation and again re-faxed the same financial documentation to Wells Fargo again.

58. Further, as a direct result of relying on Wells Fargo's misrepresentations and intentional omissions, Plaintiff received a Notice of Foreclosure. As a result, Wells Fargo filed the Foreclosure Action against Plaintiffs and obtained an order setting the foreclosure sale to occur next week, on Tuesday, April 3, 2018.

59. Plaintiffs suffered damages in the amount of the trial payments when Wells Fargo placed those payments in an unapplied account and refused to credit their mortgage account, the loss of the equity in the home, as well as damage to their credit and the loss of some or all of the funds paid to Wells Fargo for trial payments.

60. By making these misrepresentations, Wells Fargo profited by retaining Plaintiffs' trial payments for profit. Wells Fargo further profited by forcing Plaintiffs into foreclosure and

Certified Document Number: 79265485 - Page 14 of 30

avoiding the administrative costs of a good faith processing of Plaintiffs' modification application, as was required under the SPA Wells Fargo executed with the Federal Government.[41]

## D. Fraudulent Omission of the Application of Inspection Fees

61.     Despite the fact that Plaintiffs have continuously lived in their home from 1997 through the present, Wells Fargo charged their account for a "Property Inspection" on several occasions from 2011 to the present, all while they were living in the home. These inspection fees are impermissible under the HUD Servicing Guidelines and are but one example of the fraudulent charges for which Wells Fargo applied to Plaintiffs' account and added to the foreclosure judgment amount.

62.     Wells Fargo committed common law fraud upon the Plaintiffs when throughout the HAMP application process Wells Fargo employees omitted the fact that the bank was conducting unnecessary and improper inspections on their home and charging their account inspection fees.

63.     Wells Fargo committed common law fraud upon Plaintiffs when the bank requested they make trial payments during the HAMP application and omitted the fact that it had no intention of approving the application and intended to apply some of the funds sent by Plaintiffs for trial payments to fraudulent inspection fees.

64.     The fraudulent failure to disclose the bank's practice of applying trial payments to continuing inspection fees misled the Plaintiffs into believing their trial payments would be applied to their mortgage and were for the purpose of final approval of their HAMP application. Wells Fargo had a duty inform Plaintiffs of this practice and intentionally refused to do so.

65.     As a direct result of the omission, Plaintiffs lost some of the funds sent to Wells Fargo for trial payments they believed were for final approval of their HAMP application. Wells

---

[41] *See* Exhibit 1 (amended SPA), at § 2A.

Certified Document Number: 79265485 - Page 15 of 30

Fargo profited by charging Plaintiffs' account for the inspection fees and applying some of the trial payments received from Plaintiffs and retaining those funds for profit.

66.    As a direct result of the omissions, Plaintiff KIRK L. KIRN suffered lost earnings in the past and future. Specifically, Mr. Kirn was denied employment as a financial executive because of his lower credit score. His credit score went down as a direct result of Wells Fargo's misrepresentations, fraud, and omissions.

67.    Plaintiffs did not know and could not have reasonably discovered that Wells Fargo was charging improper inspection fees and diverting a portion of their trial payments to pay those fees until they retained their attorneys in this matter.

68.    Upon information and belief, Wells Fargo further profited by using Plaintiffs' HAMP application to make false claims for incentive payments to the United State Department of Treasury in the amount of $1,000.00 or $2,000.00, effectively using Plaintiffs as a pawn to defraud the Federal Government. *See, e.g., U.S. v. Bank of America, N.A., et al.,* case number 1:11-cv-03270, (E.D.N.Y.).

## VIII.  GENERAL FACTUAL ALLEGATIONS

69.    This Petition chronicles the pervasive fraud exacted by Wells Fargo on homeowners seeking Home Affordable Modification Program ("HAMP") modifications. Plaintiffs were victims of this fraud.

70.    As a result of the financial crisis of 2008 and the economic downturn, millions of Americans lost jobs, suffered reductions in income and fell behind on their mortgage payments. To stem the tide of the resulting wave of foreclosures, President Obama introduced the Home Affordable Modification Program ("HAMP") and the Troubled Asset Relief Program ("TARP") in February of 2009.

Certified Document Number: 79265485 - Page 16 of 30

71. The United States Government provided a total of $25 billion dollars to Wells Fargo pursuant to these programs. Having concluded that the costs of allowing Wells Fargo to fail were too high, the U.S. Government decided taxpayers would save the life of Wells Fargo, and they did.[42]

72. As the Congressional Oversight Panel ("Panel") described it, "almost overnight" U.S. taxpayers provided to several large financial institutions, including Wells Fargo, an infusion of over $200 billion dollars.[43] This massive bailout allowed the continued existence of several institutions including Wells Fargo.

73. The purpose of HAMP was to modify mortgages for struggling homeowners to make them affordable. Banks that received federal funding from the Troubled Asset Relief Program ("TARP") are contractually obligated to participate in HAMP. Under HAMP, banks are required to offer loan modifications to eligible borrowers to prevent foreclosures and to allow them to keep their homes.

74. As a condition of receiving $25 billion in bailout funds under the TARP, Wells Fargo, N.A., doing business as Wells Fargo Home Mortgage, agreed to provide mortgage modifications to struggling homeowners pursuant to HAMP.

75. Instead of providing relief to homeowners consistent with the purpose for which HAMP was created, Wells Fargo has used the program to enrich itself by intentionally delaying the processing of HAMP applications and extending trial modification periods in order to maximize its own revenue and fees at the expense of and by defrauding homeowners.

---

[42] United States Department of Treasury, Troubled Asset Relief Program Transactions Report, ("Treasury Transaction Report"), available at: https://www.treasury.gov/initiatives/financial-stability/reports/Pages/default.aspx.

[43] Congressional Oversight Panel, The Final Report of the Congressional Oversight Panel, March 16, 2011, ("Final Report"), available at http://www.senate.gov/general/common/generic/COP_redirect.htm.

Certified Document Number: 79265485 - Page 17 of 30

76.     Wells Fargo has also assessed hidden and prohibited fees onto the loans of homeowners who received permanent modifications despite the bank's representations to the contrary.

## A.     THE HOME AFFORDABLE MODIFICATION PROGRAM

77.     Congress passed the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201, *et seq.*, on October 3, 2008 and amended it with the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, 123 Stat. 115, on February 17, 2009 (together, the "Act").

78.     The purpose of the Act was to grant the Secretary of the Treasury authority to restore liquidity and stability to the financial system and to ensure that such authority is used in a manner that "protects home values" and "preserves homeownership." 12 U.S.C. § 5201.

79.     The Act granted the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program, or TARP. 12 U.S.C. §§ 5211, *et seq.* Under TARP, the Secretary may purchase or make commitments to purchase troubled assets from financial institutions. *Id.*

80.     Congress allocated up to $700 billion to the Treasury for TARP. 12 U.S.C. § 5225. The Act further mandates, with regard to any assets acquired by the Secretary of the Treasury that are backed by residential real estate, that the Secretary "shall implement a plan that seeks to maximize assistance for homeowners" and use the Secretary's authority over servicers to encourage them to take advantage of programs to "minimize foreclosures." 12 U.S.C. § 5219. The Act grants authority to the Secretary of the Treasury to use credit enhancement and loan guarantees to "facilitate loan modifications to prevent avoidable foreclosures." *Id.*

81.     On February 18, 2009, pursuant to their authority under the Act, the Treasury Secretary and the Director of the Federal Housing Finance Agency created the Making Home

Affordable ("MHA") initiative to help at-risk homeowners avoid foreclosure by restructuring their mortgages.

82.     The Home Affordable Modification Program, or HAMP, is the portion of the MHA initiative that provides mandatory directives for implementation. HAMP creates a uniform loan modification protocol and provides financial incentives for participating servicers to modify loans.

83.     Because Wells Fargo accepted $25 billion in bailout funds, it's required to participate in HAMP for all loans on which it functions as a loan "servicer." Michael J. Heid, who was at the time of signing the Co-President of Wells Fargo, executed a Servicer Participating Agreement ("SPA") with the federal government on April 13, 2009; thereby binding Wells Fargo to comply with HAMP procedures. On March 16, 2010, Michael J. Heid, as Executive Vice President of Wells Fargo, signed an Amended and Restated SPA.[44]

84.     These SPAs obligate Wells Fargo to comply with HAMP procedures. The SPAs explicitly incorporate all guidelines and procedures, as well as any Supplemental Directives, which include all directives, bulletins, letters, supplemental documentation, instructions and other communications issued by the Treasury, Fannie Mae or Freddie Mac regarding HAMP. Each of these documents is incorporated by reference herein.

85.     Fannie Mae and Freddie Mac have issued a number of HAMP Handbooks for mortgage loans that are not owed or guaranteed by Fannie Mae or Freddie Mac (the "Handbook(s)"). The Handbooks are a consolidated resource for programmatic guidance related to HAMP and are incorporated by reference herein. They set out the HAMP-related activities Wells Fargo must perform for first lien mortgage loans that originated on or before January 1, 2009.

---

[44] *See* Exhibit 1 (amended SPA).

## B.  HAMP APPLICATION PROCESS

86.    Wells Fargo is obligated to pre-screen for HAMP eligibility all first lien mortgages where two or more payments are due and unpaid. Wells Fargo is obligated to solicit for HAMP any borrowers who pass the pre-screen.

87.    In its written solicitations for HAMP Wells Fargo represents that payment help is available for the homeowner. In its telephone solicitations, which are scripted and were made to Plaintiffs, Wells Fargo represents that it offers HAMP modification programs to help homeowners stay in their homes, and that the program can include forgiving debt, restructuring payments and lowering the loan's interest rate.

88.    Wells Fargo's HAMP application packet, or "Starter Kit," includes conspicuous representations that identify its modification program as a "HAMP" program. Based on these representations, a reasonable applicant would believe that Wells Fargo administers its HAMP modification program pursuant to the HAMP rules by which it is legally bound.

89.    The Starter Kit also includes multiple, explicit representations that there are no fees associated with the program, such as "NO FEES. There are no fees under the Home Affordable Modification Program."

90.    The Starter Kit includes numerous representations indicating Wells Fargo's intention to "help" the homeowner, such as "[w]e're here to help you through the process. You can count on us to work with you through every step of the process" and "HELPING YOU STAY IN YOUR HOME." Wells Fargo also makes specific representations about the "help" that it will provide, including, inter alia, that "[i]f you meet the eligibility criteria, you will be offered a Trial Period Plan."

91.     Wells Fargo also represents in the Starter Kit that "it may take up to 30 days for us to review your documents[,]" and that "[w]e will process your request as quickly as possible."

92.     Contrary to these representations, Wells Fargo intentionally delays the HAMP application process for the purpose of increasing the fees, costs, penalties and interest that accrue on the loan in order to increase the bank's revenues. As a pretext for the delay, Wells Fargo repeatedly instructs homeowners to submit documents and information that they have already submitted to the bank, and documents and information that are not relevant to the decision-making process.

## C.     TRIAL PERIOD PLAN AND MODIFICATION

93.     The next step in the HAMP process is the Trial Period Plan (the "TPP"). The TPP consists of a specified three or four month period during which the homeowner is required to make monthly mortgage payments in an amount meant to approximate the homeowner's post-HAMP modification mortgage payment.

94.     Wells Fargo's TPP Agreement includes multiple, conspicuous representations that the homeowner will not be charged any fees for receiving a HAMP modification, including, but not limited to "[y]ou will not be charged any fees for this Trial Period Plan or a modification."

95.     Wells Fargo's TPP Agreement includes conspicuous representations that identify its modification program as a "HAMP" program. The TPP Agreement also includes representations about Wells Fargo's interest in keeping the homeowner in his or her home.

96.     The TPP Agreement provides that the homeowner must make three or four trial period payments on the dates specified therein. Pursuant to the TPP Agreement, Wells Fargo has the right to require the homeowner to work with a credit counselor. The TPP Agreement also requires the homeowner to establish an escrow account into which he or she must make the

required escrow payments, and to submit documents and make certain representations about his or her circumstances.

97.     The TPP Agreement further provides that after the homeowner makes each of the trial period payments specified therein, he or she will be granted a permanent modification on the defined Modification Effective Date.

98.     The HAMP Handbooks do not require the HAMP modification agreement to be notarized.

99.     Despite the fact that Plaintiffs fully performed their duties under their TPP Agreements, they were not granted permanent modifications after making all of the required trial period payments on the Modification Effective Date.

100.    Instead, Wells Fargo intentionally delayed granting permanent modifications to Plaintiffs. Wells Fargo had a financial incentive to extend the duration of the trial period. Throughout the trial period, fees, interest and penalties continue to accrue which are capitalized onto the balance of the loan when the permanent modification is granted. As a pretext for the delay, Wells Fargo requests documents that have already been submitted and documents and information that are not relevant to the homeowner's qualifications for a HAMP modification.

101.    Furthermore, although the Starter Kit, TPP Agreement and modification agreement include multiple, conspicuous representations that there are "[n]o fees or other charges for this modification," Wells Fargo actually charges each homeowner thousands of dollars for the HAMP modification.

102.    The HAMP Handbooks in effect throughout the Class Period expressly provide that certain fees are considered modification fees and may not be passed on to the homeowner:

> fees associated with modification of the mortgage, such as modification agreement recording fees and title fees generally are not covered by the security agreement

Certified Document Number: 79265485 - Page 22 of 30

and may not be capitalized.[45] Recording fees and title fees generally are considered administrative costs and may be reimbursable by the investor through the ordinary course of business, such as applicable investor contracts.[46] Servicers may not charge the borrower to cover the administrative processing costs incurred in connection with HAMP.[47] The servicer pays and will not be reimbursed for any actual out-of-pocket expenses, including, but not limited to, any required notary fees, recordation fees, title costs, property valuation fees, credit report fees, or other allowable and documented expenses.[48]

103.    The modification fees charged to homeowners include, but are not limited to, recording fees, title fees and property valuation fees. Since these fees are, in violation of the HAMP rules, capitalized onto the balance of the homeowner's loan, the homeowner ends up paying interest on the modification fees as well.

104.    While Wells Fargo's Starter Kit, TPP and other HAMP program documents explicitly and conspicuously represent that there are no fees for a HAMP modification, Wells Fargo intentionally buries its sole disclosure about these fees under pages of HAMP modification documents. All but one of these fees is identified only in a single footnote to a line item called "Recoverable Expenses." Wells Fargo does not even disclose the amount it charged individually for each of these fees. Furthermore, the footnote states explicitly that there are additional fees included in the line item "Recoverable Expenses" that are not identified.

### D.    FORECLOSURE

105.    The HAMP Handbooks in effect prohibited Wells Fargo from referring loans to foreclosure unless the homeowner had been evaluated for HAMP and determined to be ineligible

---

[45] *Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages*, Versions 1.0-4.4 at Ch. II, Section 6.3.1, ADMINISTRATIVE WEBSITE FOR SERVICERS, HOME AFFORDABLE MODIFICATION PROGRAM, https://www.hmpadmin.com/portal/programs/guidance.jsp.

[46] *Id.*

[47] *Id.* at Chapter II, Section 9.3.3.

[48] *Id.*

Certified Document Number: 79265485 - Page 23 of 30

for the program, failed to comply with his or her TPP Agreement, or the bank's efforts to solicit the homeowner for the program had failed.[49]

106.     Wells Fargo referred to foreclosure homeowners, including Plaintiffs, who had applied for a HAMP modification and submitted all of the required documents and information without first finding them to be ineligible for the program. Wells Fargo also referred to foreclosure homeowners, including Plaintiffs, who had been granted TPPs and fully performed in accordance with their TPP Agreements. As a result, homeowners were charged substantial foreclosure fees.

## IX.     CAUSES OF ACTION

## A.  WELLS FARGO FRAUDULENTLY CONCEALED THE FACTS GIVING RISE TO THE PLAINTIFFS' CLAIMS

107.     Plaintiffs incorporate by reference all prior paragraphs of this Petition as if fully set forth herein.

108.     Wells Fargo, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs the series of secretive and deceptive acts set forth in this Petition that caused Plaintiffs to be unable to obtain a HAMP mortgage modification and ultimately resulted in the pending foreclosure proceedings of Plaintiffs' home.

109.     Plaintiffs were not aware and could not have reasonably discovered Wells Fargo's fraudulent behavior until they retained their attorneys in this matter in March 2018.

110.     Wells Fargo elected to conceal the true nature of their scheme by adopting and implementing procedures to conceal the extent and nature their scheme to deny consumers like the Plaintiffs the opportunity to modify their home mortgage under HAMP, to impose fraudulent fees

---

[49] *Id.* at Chapter II, Section 3.1.

upon Plaintiffs as alleged in the complaint and to misappropriate Plaintiffs mortgage and/or TPP payments.

111. Because the conduct which caused Plaintiffs' losses in this matter was purposefully hidden and secretive, Plaintiffs ability to assert the claim pled herein was inherently undiscoverable prior to the time Plaintiffs retained their attorneys in this matter.

112. Because the Plaintiffs did not know and could not have reasonably discovered the facts that formed the basis of their fraud claims against Wells Fargo until they retained their attorneys in this matter, the time in which to file their claims under the applicable statute of limitations did not begin to run until Plaintiffs retained their attorneys in this matter. The running of any statute of limitations has been tolled by reason of Wells Fargo's fraudulent concealment as set forth above in this Petition.

113. The lack of awareness concerning the causal relationship between Wells Fargo's fraudulent scheme and Plaintiff's foreclosure was not the result of silence or passive concealment. Wells Fargo, engaged in deliberate acts (*i.e.*, affirmative misrepresentations, ignoring documents, etc.) to prevent subsequent discovery.

## B. COUNT I – COMMON LAW FRAUD

114. The allegations in the preceding paragraphs of Plaintiffs' Petition are incorporated herein by reference as if fully set forth herein.

115. Wells Fargo made false statements of fact to Plaintiffs through the fraudulent scheme described in this Petition.

116. The statements made by Wells Fargo to Plaintiffs that required default or delinquency on their mortgage in order to be eligible for HAMP was false. Neither default nor delinquency was required under HAMP for eligibility, and Wells Fargo was aware of this fact.

Certified Document Number: 79265485 - Page 25 of 30

117. Plaintiffs were falsely informed by Wells Fargo employees that their HAMP application documents were not received, were incomplete or were not current, causing Plaintiffs to resubmit the information again and again.

118. Wells Fargo made false statements of fact and intentional omissions when Plaintiffs were informed they were "approved" and requested they make "trial payments."

119. Wells Fargo employees made these statements with knowledge they were false.

120. Wells Fargo made these statements for the purpose of inducing Plaintiffs to rely on them.

121. Plaintiffs believed these statements were true, relied on them, and as a result, suffered damages when they refrained from making their regular mortgage payments.

122. Plaintiffs believed these statements were true, relied on them, and as a result, suffered damages when they unnecessarily sent their HAMP application and supporting information via U. S. Mail and Federal Express over and over.

123. Plaintiffs believed these statements were true, relied on them, and as a result, suffered damages when they made trial payments that were either retained for profit or applied to fraudulent inspection fees by Wells Fargo.

124. As a direct and proximate cause of the knowing misrepresentations and omissions by Wells Fargo described in the Petition, Plaintiffs suffered damages including but not limited to the costs for sending their HAMP applications and financial documents on multiple occasions when Wells Fargo had no intention of reviewing it, the loss of time spent sending and re-sending the HAMP application and financial documents, the loss of their home and the equity in that home, as well as damage to their credit and the loss of some or all of the funds paid to Wells Fargo for trial payments for which Wells Fargo retained for profit.

Certified Document Number: 79265485 - Page 26 of 30

125.    Due to the intentional omission, Plaintiffs were unaware their trial payments were

being used to pay fraudulent inspection fees by Wells Fargo that were impermissible.

126.    For example, absent a specific finding of need by a local HUD office, the shortest

period between inspections authorized by the HUD servicing guidelines is 25 days:

> Generally, reimbursement will be limited to one inspection for each 30-day cycle.
> This inspection should not be earlier than 25 days from the last inspection or later
> than 35 days after the last inspection. A distinction must be made between those
> items which are required and those which are merely recommended. Only where a
> local HUD Office has identified a need to inspect more frequently, and has made
> this a requirement, will a mortgagee be reimbursed for these additional inspections.
> HUD Servicing Guidelines, Chapter 9, § 4330.1, 9-9 Inspection, Preservation and
> Protection Requirements, A. Inspections (c)(2)(a).

127.    Further, multiple inspections are only allowed when the mortgaged property is

vacant:

> Where the mortgage is in default and the mortgagee has established that the
> mortgaged property is vacant, mortgagees shall inspect the mortgaged property
> every 25 to 35 days. HUD Servicing Guidelines, Chapter 9, § 4330.1, 9-9
> Inspection, Preservation and Protection Requirements, A. Inspections (c).

128.    However, even before a series of inspections may begin, under HUD servicing

guidelines, the mortgage must be in default, and the mortgagee is required to determine the

Plaintiff's home was vacant/abandoned by making a phone call and performing a visual inspection

to ensure the property had become vacant/abandoned:

> When the mortgage is in default and a payment is not received within 45 days of
> the due date and efforts to reach the mortgagor or occupant at least by telephone
> have been unsuccessful, the mortgagee must perform a visual inspection of the
> mortgaged property to determine if it has become vacant or abandoned. HUD
> Servicing Guidelines, Chapter 9, § 4330.1, 9-9 Inspection, Preservation and
> Protection Requirements, A. Inspections (a)(1).

129.    Wells Fargo conducted inspections while Plaintiffs were living in their home.

Although there is no private cause of action under the Guidelines for the Plaintiffs, these fees are

Certified Document Number: 79265485 - Page 27 of 30

but one example of the overall fraudulent mortgage servicing scheme Wells Fargo has operated for years and for which Plaintiffs have been victimized.

130.    As a direct and proximate cause of the knowing omissions by Wells Fargo described in the Petition, Plaintiffs suffered damages in the loss of funds paid to Wells Fargo for trial payments for which Wells Fargo applied to fraudulent inspection fees.

## X.    JURY DEMAND

131.    Plaintiffs demand a trial by jury on all issues pursuant to their rights under the Seventh Amendment to the U.S. Constitution and the Texas Rules of Civil Procedure.

## XI.    PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that the Court enter an order: (1) awarding Plaintiffs actual damages, compensatory damages, non-economic damages, lost earnings in the past and future, consequential damages, and exemplary damages, (2) awarding Plaintiffs pre-judgment interest, post-judgment interest, costs of court, attorney's fees, case expenses, and, (3) granting such other relief as the Court deems just and proper.

Certified Document Number: 79265485 - Page 28 of 30

Respectfully Submitted,

**HUGHES ELLZEY, LLP**

_____/s/ W. Craft Hughes_____
W. Craft Hughes
Texas Bar No. 24046123
Jarrett L. Ellzey
Texas Bar No. 24040864
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone (713) 322-6387
Fax (888) 995-3335
craft@hughesellzey.com
jarrett@hughesellzey.com

Charles F. Herd, Jr.
Texas Bar No. 09504480
Kevin P. Parker
Texas Bar No. 15494020
**THE LANIER LAW FIRM, P.C.**
6810 FM 1960 West
Houston, TX 77069
Phone (713) 659-5200
Fax (713) 659-2204
cfh@lanierlawfirm.com
kevin.parker@lanierlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

Certified Document Number: 79265485 - Page 29 of 30

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the clerk of court using the CM/ECF system on <u>March 29, 2018</u>, and further certify that a copy of the foregoing was served on all counsel of record pursuant to the Federal Rules of Civil Procedure as follows:

> *VIA FIRST-CLASS MAIL*
> *9405 5016 9932 0134 9576 00*
> Elizabeth Hayes (TBN 24069001)
> elizabeth.hayes@bonialpc.com
> Michael Hupf (TBN 24102799)
> michael.hupf@bonialpc.com
> BONIAL & ASSOCIATES, P.C. f/k/a BUCKLEY MADOLE, P.C.
> P.O. Box 9013
> Addison, Texas 75001
> (972) 643-6600 Office
> (877) 897-3991 Toll Free
> (972) 643-6699 Facsimile
> *Attorneys for Defendant,*
> *Wells Fargo Bank, N.A.*

/s/ W. Craft Hughes
W. Craft Hughes



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265485 Total Pages:  30

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

AMENDED AND RESTATED

## COMMITMENT TO PURCHASE FINANCIAL INSTRUMENT
### and
## SERVICER PARTICIPATION AGREEMENT

This Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement (the "Commitment") is entered into as of the Effective Date, by and between Federal National Mortgage Association, a federally chartered corporation, as financial agent of the United States ("Fannie Mae"), and the undersigned party ("Servicer"). Capitalized terms used, but not defined contextually, shall have the meanings ascribed to them in Section 12 below.

### Recitals

WHEREAS, the U.S. Department of the Treasury (the "Treasury") has established a Home Affordable Modification Program (the "HAMP") pursuant to section 101 and 109 of the Emergency Economic Stabilization Act of 2008 (the "Act"), as section 109 of the Act has been amended by section 7002 of the American Recovery and Reinvestment Act of 2009;

WHEREAS, Fannie Mae, as financial agent of the United States, and Servicer entered into a Commitment to Purchase Financial Instrument and Servicer Participation Agreement for the Home Affordable Modification Program under the Emergency Economic Stabilization Act (the "Prior Agreement") in connection with the implementation of HAMP, the primary purpose of which was the modification of first lien mortgage loan obligations and the provision of loan modification and foreclosure prevention services relating thereto (the "HAMP Services");

WHEREAS, the Treasury has established a variety of new programs (together with the HAMP, the "Programs") under the Act to further stabilize the housing market by facilitating second lien mortgage loan modifications and extinguishments, providing home price decline protection incentives, encouraging foreclosure alternatives, such as short sales and deeds in lieu of foreclosure, and making other foreclosure prevention services available to the marketplace (collectively, together with the HAMP Services, the "Services");

WHEREAS, the Programs may include Services relating to FHA, VA and USDA loans;

WHEREAS, Fannie Mae has been designated by the Treasury as a financial agent of the United States in connection with the implementation of the Programs; all references to Fannie Mae in the Agreement shall be in its capacity as financial agent of the United States;

WHEREAS, Fannie Mae will fulfill the roles of administrator and record keeper for the Programs, and in conjunction therewith must standardize certain mortgage modification and foreclosure prevention practices and procedures as they relate to the Programs, consistent with the Act and in accordance with the directives of, and guidance provided by, the Treasury;

WHEREAS, Federal Home Loan Mortgage Corporation ("Freddie Mac") has been designated by the Treasury as a financial agent of the United States and will fulfill a compliance role in connection with the Programs; all references to Freddie Mac in the Agreement shall be in its capacity as compliance agent of the Programs;

WHEREAS, Fannie Mae and Servicer desire to amend and restate the Prior Agreement in its entirety as set forth herein;

WHEREAS, all Fannie Mae and Freddie Mac approved servicers are being directed through their respective servicing guides and bulletins to implement the Programs with respect to mortgage loans owned, securitized, or guaranteed by Fannie Mae or Freddie Mac (the "GSE Loans"); accordingly, this Agreement does not apply to the GSE Loans;

WHEREAS, all other servicers, as well as Fannie Mae and Freddie Mac approved servicers, that wish to participate in the Programs with respect to loans that are not GSE Loans (collectively, "Participating Servicers") must agree to certain terms and conditions relating to the respective roles and responsibilities of participants and other financial agents of the government; and

WHEREAS, Servicer wishes to participate in the Programs as a Participating Servicer on the terms and subject to the conditions set forth herein.

Accordingly, in consideration of the representations, warranties, and mutual agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Fannie Mae and Servicer agree to amend and restate the Prior Agreement in its entirety, as follows.

Agreement

## 1. Services

A.      Contemporaneously with the execution and delivery of this Commitment and the Financial Instrument, Servicer will execute and deliver to Fannie Mae one or more schedules describing the Services to be performed by Servicer pursuant to this Agreement, effective as of the Effective Date of the Agreement (each, a "Service Schedule" or an "Initial Service Schedule" and, collectively, the "Initial Service Schedules"). After the Effective Date of the Agreement, Servicer may opt-in to any additional initiatives offered by Treasury in connection with the Programs by executing and delivering to Fannie Mae one or more additional Service Schedules describing the Services relating to such initiatives (each, a "Service Schedule" or an "Additional Service Schedule" and, collectively, the "Additional Service Schedules") (the Initial Service Schedules and the Additional Service Schedules, collectively, the "Service Schedules"). All Service Schedules that are executed and delivered to Fannie Mae by Servicer from time to time will be numbered sequentially (e.g. Service Schedule A-1; Service Schedule A-2; Service Schedule A-3; et seq.) and are referenced herein, collectively, as Exhibit A; Exhibit A is hereby incorporated into the Commitment by this reference.

B.      Subject to Section 10.C., Servicer shall perform the Services described in (i) the Financial Instrument attached hereto as Exhibit B (the "Financial Instrument"); (ii) the Service Schedules attached hereto, collectively, as Exhibit A; (iii) the guidelines and procedures issued by the Treasury with respect to the Programs outlined in the Service Schedules (the "Program Guidelines"); and (iv) any supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications, including, but not limited to, business continuity requirements, compliance requirements, performance requirements and related remedies, issued by the Treasury, Fannie Mae, or Freddie Mac in order to change, or further describe or clarify the scope of, the rights and duties of the Participating Servicers in connection with the Programs outlined in the Service Schedules (the "Supplemental Directives" and, together with the Program Guidelines, the "Program Documentation"). The Program Documentation will be available to all Participating Servicers at www.HMPadmin.com; for the avoidance of doubt, the term "Program Documentation" includes all of the Program Guidelines and Supplemental Directives issued by Treasury and made available to Participating Servicers at www.HMPadmin.com prior to the Effective Date of the Agreement. The Program Documentation, as the same may be modified or amended from time to time in accordance with Section 10 below, is hereby incorporated into the Commitment by this reference.

C.      Servicer's representations and warranties, and acknowledgement of and agreement to fulfill or satisfy certain duties and obligations, with respect to its participation in the Programs and under the Agreement are set forth in the Financial Instrument. Servicer's certification as to its continuing compliance with, and the truth and accuracy of, the representations and warranties set forth in the Financial Instrument will be provided annually in the form attached hereto as Exhibit C (the "Certification"), beginning on June 1, 2010 and again on June 1 of each year thereafter during the Term (as defined below) and upon the execution and delivery by Servicer of any Additional Service Schedule during the Term.

D.      The recitals set forth above are hereby incorporated herein by this reference.

Certified Document Number: 79265486 - Page 2 of 41

## 2. Authority and Agreement to Participate in Programs

A.      Servicer shall perform the Services for all mortgage loans it services, whether it services such mortgage loans for its own account or for the account of another party, including any holders of mortgage-backed securities (each such other party, an "Investor").

B.      Fannie Mae acknowledges that Servicer may service mortgage loans for its own account or for the account of one or more Investors and may be subject to restrictions set forth in pooling and servicing agreements or other servicing contracts governing Servicer's servicing of a mortgage loan; Servicer shall use reasonable efforts to remove all prohibitions or impediments to its authority, and use reasonable efforts to obtain all third party consents, waivers and delegations that are required, by contract or law, in order to perform the Services.

C.      Notwithstanding subsection B., if (x) Servicer is unable to obtain all necessary consents, waivers and delegations for performing any Services under the Programs, or (y) the pooling and servicing agreement or other servicing contract governing Servicer's servicing of a mortgage loan prohibits Servicer from performing such Services for that mortgage loan, Servicer shall not be required to perform such Services with respect to that mortgage loan and shall not receive all or any portion of the Purchase Price (defined below) otherwise payable for such Services with respect to such loan.

D.      Notwithstanding anything to the contrary contained herein, the Agreement does not apply to GSE Loans. Servicers are directed to the servicing guides and bulletins issued by Fannie Mae and Freddie Mac, respectively, concerning the Programs as applied to GSE Loans.

E.      Servicer's performance of the Services and implementation of the Programs shall be subject to review by Freddie Mac and its agents and designees as more fully set forth in the Agreement.

## 3. Set Up; Prerequisite to Payment

Servicer will provide to Fannie Mae: (a) the set up information required by the Program Documentation and any ancillary or administrative information requested by Fannie Mae in order to process Servicer's participation in the Programs as a Participating Servicer on or before the Effective Date of the Agreement as to the Initial Service Schedules that are executed and delivered contemporaneously herewith, and on or before the effective date of the Additional Service Schedules (if any) executed and delivered after the Effective Date of the Agreement; and (b) the data elements for each mortgage obligation, property, or borrower eligible for the Programs as and when described in the Program Documentation and the Financial Instrument. Purchase Price payments will not be remitted pursuant to Section 4 with respect to Services for which the required data elements have not been provided.

## 4. Agreement to Purchase Financial Instrument; Payment of Purchase Price

A.      Fannie Mae, in its capacity as a financial agent of the United States, agrees to purchase, and Servicer agrees to sell to Fannie Mae, in such capacity, the Financial Instrument that is executed and delivered by Servicer to Fannie Mae in the form attached hereto as <u>Exhibit B</u>, in consideration for the payment by Fannie Mae, as agent, of the Purchase Price.

B.      The conditions precedent to the payment by Fannie Mae of the Purchase Price with respect to the Services described on the Initial Service Schedules are: (a) the execution and delivery of the Commitment, the Initial Service Schedules, and the Financial Instrument by Servicer to Fannie Mae; (b) the execution and delivery of the Commitment and the Initial Service Schedules by Fannie Mae to Servicer; (c) the delivery of copies of the fully executed Commitment, Initial Service Schedules and Financial Instrument to Treasury on the Effective Date of the Agreement; (d) the performance by Servicer of the Services described in the Agreement, in accordance with the terms and conditions thereof, to the reasonable satisfaction of Fannie Mae and Freddie Mac; and (e) the satisfaction by Servicer of such other obligations as are set forth in the Agreement.

Certified Document Number: 79265486 - Page 3 of 41

C.     The conditions precedent to the payment by Fannie Mae of the Purchase Price with respect to the Services described on the Additional Service Schedules (if any) are: (a) the execution and delivery of the Additional Service Schedules and the Certification by Servicer to Fannie Mae; (b) the execution and delivery of the Additional Service Schedules by Fannie Mae to Servicer; (c) the delivery of copies of the fully executed Additional Service Schedules to Treasury; (d) the performance by Servicer of the Services described in the Agreement, in accordance with the terms and conditions thereof, to the reasonable satisfaction of Fannie Mae and Freddie Mac; and (e) the satisfaction by Servicer of such other obligations as are set forth in the Agreement.

D.     Solely in its capacity as the financial agent of the United States, and subject to subsection E. below, Fannie Mae shall remit all payments described in the Program Documentation to Servicer for the account or credit of Servicer, Investors and borrowers, in each case in accordance with the Program Documentation (all such payments, collectively, the "Purchase Price"); all payments remitted to Servicer for the credit or account of third parties under the Program Documentation shall be applied by Servicer as required by the Program Documentation. Fannie Mae shall have no liability to Servicer with respect to the payment of the Purchase Price, unless and until: (a) Servicer and all other interested parties have satisfied all pre-requisites set forth herein and in the Program Documentation relating to the applicable Program payment structure, including, but not limited to, the delivery of all data elements required by Section 3 of this Commitment; and (b) the Treasury has provided funds to Fannie Mae for remittance to Servicer, together with written direction to remit the funds to Servicer in accordance with the Program Documentation.

E.     The Purchase Price will be paid to Servicer by Fannie Mae as the financial agent of the United States as and when described herein and in the Program Documentation in consideration for the execution and delivery of the Financial Instrument by Servicer on or before the Effective Date of the Agreement, upon the satisfaction of the conditions precedent to payment described in this Section 4.

F.     The value of the Agreement is limited to **$6,406,790,000.00** (the "Program Participation Cap"). Accordingly, the aggregate Purchase Price payable to Servicer under the Agreement with respect to all Services described on all of the Service Schedules that are executed and delivered in connection with the Agreement may not exceed the amount of the Program Participation Cap. For each Service to be performed by Servicer, the aggregate remaining Purchase Price available to be paid to Servicer under the Agreement will be reduced by the maximum Purchase Price potentially payable with respect to that Service. In the event the Purchase Price actually paid with respect to that Service is less than the maximum Purchase Price potentially payable, the aggregate remaining Purchase Price available to be paid to Servicer under the Agreement will be increased by the difference between such amounts. Notwithstanding the foregoing, no agreements with any party that may result in a new payment obligation under the Programs will be effected under the Agreement, and no payments will be made with respect to any new Services, from and after the date on which the aggregate Purchase Price paid or payable to Servicer under the Agreement equals the Program Participation Cap. Treasury may, from time to time in its sole discretion, adjust the amount of the Program Participation Cap. Servicer will be notified of all adjustments to the Program Participation Cap in writing by Fannie Mae.

G.     Servicer shall maintain complete and accurate records of, and supporting documentation for, all Services provided in connection with the Programs including, but not limited to, data relating to borrower payments (e.g., principal, interest, taxes, homeowner's insurance, hazard insurance, flood insurance and homeowner's association and/or condo fees), delinquencies and the terms of each agreement executed under the Programs (e.g., trial modification agreements, loan modification agreements and extinguishment agreements), which will be relied upon by Fannie Mae when calculating, as financial agent for the United States, the Purchase Price to be paid by the Treasury through Fannie Mae or any other financial agent. Servicer agrees to provide Fannie Mae and Freddie Mac with documentation (including copies of executed borrower agreements) and other information with respect to any amounts paid by the Treasury as may be reasonably requested by such parties. In the event of a discrepancy or error in the amount of the Purchase Price paid hereunder, at Fannie Mae's election, (x) Servicer shall remit to Fannie Mae the amount of any overpayment within thirty (30) days of receiving a refund request from Fannie Mae, or (y) Fannie Mae may immediately offset the amount of the overpayment against other amounts due and payable to Servicer by Fannie Mae, as financial agent of the United States, upon written notice to Servicer. Servicer shall still be obligated to credit

Certified Document Number: 79265486 - Page 4 of 41

to the respective accounts of Investors and borrowers any portion of the Purchase Price to which they are entitled (if any) notwithstanding such offset unless otherwise directed by Fannie Mae.

H. At the election and upon the direction of the Treasury and with prior written notice to Servicer, Fannie Mae may deduct from any amount to be paid to Servicer any amount that Servicer, Investor, or borrower is obligated to reimburse or pay to the United States government, provided, however, that any amount withheld under this subsection H. will be withheld only from the amounts payable to, or for the account or credit of, the party which is liable for the obligation to the United States government.

## 5. Term

A. New Services may be undertaken by Servicer as described in the Financial Instrument and the Program Documentation from and after the Effective Date until December 31, 2012 (the "Initial Term"), subject to one or more extensions of the Initial Term by the Treasury, or earlier termination of the Agreement by Fannie Mae pursuant to the provisions hereof, or earlier suspension or termination of one or more of the Programs by the Treasury, provided, however, no new Services may be undertaken by Servicer, and Servicer will have no further obligation to perform any Services under this Agreement, from and after the date on which the Program Participation Cap is reached.

B. Servicer shall perform the Services described in the Program Documentation in accordance with the terms and conditions of the Agreement during the Initial Term and any extensions thereof (the Initial Term, together with all extensions thereof, if any, the "Term"), and during such additional period as may be necessary to: (i) comply with all data collection, retention and reporting requirements specified in the Program Documentation during and for the periods set forth therein; and (ii) complete all Services that were initiated by Servicer, including, but not limited to, the completion of all documentation relating thereto, during the Term. Servicer agrees that it will work diligently to complete all Services as soon as reasonably possible after the end of the Term or earlier termination.

C. Notwithstanding Sections 5.A. and 5.B., if the Servicer has elected to participate in the Second Lien Modification Program by executing and delivering to Fannie Mae a Service Schedule relating thereto, the Servicer in its discretion, may elect to opt out of the Second Lien Modification Program on an annual basis by providing notice to Fannie Mae in accordance with Section 9 hereof within 30 days following the anniversary of the Effective Date of the Service Schedule for the Second Lien Modification Program. Following the Servicer's election to opt out of the Second Lien Modification Program, the Servicer will not be required to perform any Services for any new mortgage loans under the Second Lien Modification Program; however, the Servicer must continue to perform any Services for any mortgage loan for which it had already begun performing Services prior to electing to opt out of the Second Lien Modification Program.

D. The Agreement, or any of the Programs implemented under the Agreement, may be terminated by Fannie Mae or Servicer prior to the end of the Term pursuant to Section 6 below.

## 6. Defaults, Acts of Bad Faith and Early Termination; Remedies for and Effects of Defaults, Acts of Bad Faith and Early Termination; Opportunity to Cure

A. The following constitute events of default by Servicer under the Agreement (each, an "Event of Default" and, collectively, "Events of Default"):

> (1) Servicer fails to perform or comply with any of its material obligations under the Agreement, including, but not limited to, circumstances in which Servicer fails to ensure that all eligibility criteria and other conditions precedent specified in applicable Program Documentation are satisfied prior to effectuating any Services in connection with any of the Programs.

5

(2) Servicer: (a) ceases to do business as a going concern; (b) makes a general assignment for the benefit of, or enters into any arrangement with creditors in lieu thereof; (c) admits in writing its inability to pay its debts as they become due; (d) files a voluntary petition under any bankruptcy or insolvency law or files a voluntary petition under the reorganization or arrangement provisions of the laws of the United States or any other jurisdiction; (e) authorizes, applies for or consents to the appointment of a trustee or liquidator of all or substantially all of its assets; (f) has any substantial part of its property subjected to a levy, seizure, assignment or sale for or by any creditor or governmental agency; or (g) enters into an agreement or resolution to take any of the foregoing actions.

(3) Servicer, any employee or contractor of Servicer, or any employee or contractor of Servicers' contractors, commits a grossly negligent, willful or intentional, or reckless act (including, but not limited to, misrepresentation or fraud) in connection with any of the Programs or the Agreement.

(4) Any representation, warranty, or covenant made by Servicer in the Agreement or any Certification is or becomes materially false, misleading, incorrect, or incomplete.

(5) An evaluation of performance that includes any specific findings by Freddie Mac, in its sole discretion, that Servicer's performance under any performance criteria established pursuant to applicable Program Documentation is materially insufficient, or any failure by Servicer to comply with any directive issued by Fannie Mae or Freddie Mac with respect to documents or data requested, findings made, or remedies established, by Fannie Mae and/or Freddie Mac in conjunction with such performance criteria or other Program requirements.

B. Fannie Mae may take any, all, or none of the following actions upon an Event of Default by Servicer under the Agreement:

(1) Fannie Mae may: (i) withhold some or all of the Servicer's portion of the Purchase Price until, in Fannie Mae's determination, Servicer has cured the default; and (ii) choose to utilize alternative means of paying any portion of the Purchase Price for the credit or account of borrowers and Investors and delay paying such portion pending adoption of such alternative means.

(2) Fannie Mae may: (i) reduce the amounts payable to Servicer under Section 4; and/or (ii) obtain repayment of prior payments made to Servicer under Section 4, provided, however, Fannie Mae will seek to obtain repayment of prior payments made under Section 4 only with respect to Services that are determined by Fannie Mae or Freddie Mac to have been impacted by, or that Fannie Mae or Freddie Mac believes may have been, or may be, impacted by, the Event of Default giving rise to the remedy.

(3) Fannie Mae may require Servicer to submit to additional Program administrator oversight, including, but not limited to, additional compliance controls and quality control reviews.

(4) Fannie Mae may terminate the Agreement and cease its performance hereunder, or cease its performance hereunder as to any Program in which Servicer is a participant.

(5) Fannie Mae may require Servicer to submit to information and reporting with respect to its financial condition and ability to continue to meet its obligations under the Agreement.

C. The following constitute acts of bad faith of Investors and borrowers in connection with the Programs (each, an "Act of Bad Faith" and, collectively, "Acts of Bad Faith"): an Investor or borrower commits a grossly negligent, willful or intentional, or reckless act (including, but not limited to, misrepresentation or fraud) in connection with any of the Programs

Certified Document Number: 79265486 - Page 6 of 41

(including, but not limited to, in connection with such Investor's or borrower's response to Program questionnaires, the execution or delivery to Servicer, Fannie Mae, or Treasury of any of the agreements relating to such Investor's or borrower's participation in any of the Programs and the production of supporting documentation therefor and in connection with any audit or review by Freddie Mac for Investor or borrower compliance with the Programs). For brevity, any such Investor or borrower is referred to in this subsection as a "defaulting party" or as a "defaulting" Investor or borrower and the Act of Bad Faith by such Investor or borrower as a "default."

D. Fannie Mae may take any, all, or none of the following actions if an <u>Act of Bad Faith involving an Investor or a borrower</u> occurs, or is reasonably believed by Fannie Mae to have occurred, in connection with any of the Programs:

(1) Fannie Mae may withhold all or any portion of the Purchase Price payable to, or for the credit or account of, the defaulting party until, in Fannie Mae's determination, the default has been cured or otherwise remedied to Fannie Mae's satisfaction.

(2) Fannie Mae may: (i) reduce the amounts payable to Servicer for the credit, or account of, the defaulting party under Section 4; and/or (ii) obtain repayment of prior payments made to or for the credit or account of the defaulting party under Section 4. Servicer will reasonably cooperate with, and provide reasonable support and assistance to, Fannie Mae and Freddie Mac in connection with their respective roles and, in Fannie Mae's case, in connection with its efforts to obtain repayment of prior payments made to Investors and borrowers as provided in this subsection.

(3) Fannie Mae may require Servicer to submit to additional Program administrator oversight, including, but not limited to, additional compliance controls and quality control reviews.

(4) Fannie Mae may cease its performance hereunder as to some or all of the Services subject to the Agreement that relate to the defaulting Investor or borrower.

(5) Fannie Mae may terminate the Agreement and cease its performance hereunder if Acts of Bad Faith occur on a recurring basis, are widespread among the Investor or borrower bases served by Servicer, or occur in combination or in connection with one or more Events of Default by Servicer.

E. In addition to the termination rights set forth above, Fannie Mae may terminate the Agreement or any Program implemented under the Agreement immediately upon written notice to Servicer:

(1) at the direction of the Treasury;

(2) in the event of a merger, acquisition, or other change of control of Servicer;

(3) in the event that a receiver, liquidator, trustee, or other custodian is appointed for the Servicer; or

(4) in the event that a material term of the Agreement is determined to be prohibited or unenforceable as referred to in Section 11.C.

F. The Agreement will terminate automatically:

(1) in the event that the Financial Agency Agreement, dated February 18, 2009, by and between Fannie Mae and the Treasury is terminated; or

(2) upon the expiration or termination of all of the Programs implemented under the Agreement.

7

G. The effects of the expiration or termination of the Agreement are as follows:

(1) In the event that the Agreement expires at the end of the Initial Term or any extension thereof pursuant to Section 5, or in the event that the Agreement expires or is terminated pursuant to Section 6.E. or 6.F., Fannie Mae shall, solely in its capacity as the financial agent of the United States, continue to remit all amounts that are properly payable pursuant to Section 4 to Servicer in accordance with the Program Documentation until paid in full, provided, however, that Purchase Price payments will be made only with respect to Services that were performed in accordance with the applicable Program Documentation prior to the date of expiration or termination and that do not exceed the Program Participation Cap.

(2) In the event that the Agreement is terminated in connection with an Event of Default by Servicer, no compensation with respect to any Service will be paid to Servicer for the account of the Servicer subsequent to termination; Fannie Mae's only continuing obligations as financial agent of the United States subsequent to termination will be to remit all payments that are properly payable pursuant to Section 4 to Servicer (or, at Fannie Mae's discretion, an alternative provider) for the account of borrowers and Investors in accordance with the Program Documentation until paid in full.

(3) In the event that the Agreement is terminated in connection with an Act of Bad Faith by an Investor or a borrower, no compensation with respect to any Services will be paid to Servicer for the credit or account of the defaulting Investor or borrower subsequent to termination; Fannie Mae's only continuing obligation as financial agent of the United States subsequent to termination will be to remit all payments that are properly payable pursuant to Section 4 to Servicer for the credit or account of non-defaulting parties as described in the applicable Program Documentation until paid in full. For the avoidance of doubt, if the Act of Bad Faith resulting in the termination of the Agreement occurs in connection with an Event of Default of Servicer, no compensation with respect to any Service will be paid to Servicer for the account of the Servicer subsequent to termination.

H. Fannie Mae, in its capacity as the financial agent of the United States, may reduce the amounts payable to Servicer under Section 4, or obtain repayment of prior payments made under Section 4, in connection with: (a) an evaluation of Servicer's performance that includes any specific findings by Freddie Mac that Servicer's performance under any performance criteria established pursuant to the Program Documentation is materially insufficient, or (b) any failure by Servicer to comply materially with any directive issued by Fannie Mae or Freddie Mac with respect to documents or data requested, findings made, or remedies established, by Fannie Mae and/or Freddie Mac in conjunction with such performance criteria or other Program requirements; provided, however, Fannie Mae will seek to obtain repayment of prior payments made under Section 4 only with respect to Services that are determined by Fannie Mae or Freddie Mac to have been impacted by, or that Fannie Mae or Freddie Mac believes may have been, or may be, impacted by, the findings giving rise to this remedy. Fannie Mae may initially avail itself of this remedy in lieu of a specific declaration of an Event of Default, provided, however, that doing so shall not preclude Fannie Mae from later declaring an Event of Default or exercising any other rights or remedies otherwise available to it under this Section 6, or at law or in equity, in connection with the event giving rise to this remedy, or any future events giving rise to this remedy.

I. The remedies available to Fannie Mae upon an Event of Default and an Act of Bad Faith under this Section are cumulative and not exclusive; further, these remedies are in addition to, and not in lieu of, any other remedies available to Fannie Mae at law or in equity.

J. In the event of the expiration or termination of the Agreement or any Program implemented under the Agreement under any circumstances, Servicer and Fannie Mae agree to cooperate with one another on an ongoing basis to ensure an effective and orderly transition or resolution of the Services, including the provision of any information, reporting, records and data required by Fannie Mae and Freddie Mac.

Certified Document Number: 79265486 - Page 8 of 41

K. If an Event of Default under Section 6.A.1., Section 6.A.4., or Section 6.A.5. occurs and Fannie Mae determines, in its sole discretion, that the Event of Default is curable and elects to exercise its right to terminate the Agreement, Fannie Mae will provide written notice of the Event of Default to Servicer and the Agreement will terminate automatically thirty (30) days after Servicer's receipt of such notice, if the Event of Default is not cured by Servicer to the reasonable satisfaction of Fannie Mae prior to the end of such thirty (30) day period. If Fannie Mae determines, in its sole discretion, that an Event of Default under Section 6.A.1., Section 6.A.4., or Section 6.A.5. is not curable, or if an Event of Default under Section 6.A.2. or Section 6.A.3. occurs, and Fannie Mae elects to exercise its right to terminate the Agreement under Section 6.B.4., Fannie Mae will provide written notice of termination to the Servicer on or before the effective date of the termination.

## 7. Disputes

Fannie Mae and Servicer agree that it is in their mutual interest to resolve disputes by agreement. If a dispute arises under the Agreement, the parties will use all reasonable efforts to promptly resolve the dispute by mutual agreement. If a dispute cannot be resolved informally by mutual agreement at the lowest possible level, the dispute shall be referred up the respective chain of command of each party in an attempt to resolve the matter. This will be done in an expeditious manner. Servicer shall continue diligent performance of the Services pending resolution of any dispute. Fannie Mae and Servicer reserve the right to pursue other legal or equitable rights they may have concerning any dispute. However, the parties agree to take all reasonable steps to resolve disputes internally before commencing legal proceedings.

## 8. Transfer or Assignment; Mergers, Acquisitions and Changes of Control; Effects of Assignment

A.   Mortgage loans and servicing rights are freely transferable under this Agreement, subject to: (i) the contractual requirements regarding notice and the execution and delivery of the Assignment and Assumption Agreement, in the form of Exhibit D, set forth in Sections 8 and 9 hereof, and (ii) any restrictions under applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements. Servicer must provide written notice to Fannie Mae and Freddie Mac pursuant to Section 9 below of: (i) any transfers or assignments of mortgage loans, or servicing rights relating to mortgage loans, that are 60 or more days delinquent and otherwise eligible for consideration or process under one or more of the Programs at the time of transfer or assignment, or for which the Servicer is performing Services at the time of transfer or assignment (collectively, "Eligible Loans"); and (ii) any other transfers or assignments of Servicer's rights and obligations relating to Eligible Loans under this Agreement, including, but not limited to, transfers or assignments of any rights or obligations relating to Eligible Loans under this Agreement that occur in connection with the merger, acquisition, or other change of control of Servicer. Such notice must include payment instructions for payments to be made to the transferee or assignee of the Eligible Loans, servicing rights or other rights and obligations subject to the notice (if applicable), and, subject to Section 8.B. below, evidence of the assumption by such transferee or assignee of the Eligible Loans, servicing rights or other rights and obligations that are transferred, in the form of Exhibit D (the "Assignment and Assumption Agreement"). Servicer acknowledges that Fannie Mae will continue to remit payments to Servicer in accordance with Section 4 for Services relating to mortgage loans, servicing rights or other rights and obligations that have been assigned or transferred, and that Servicer will be liable for underpayments, overpayments and misdirected payments, unless and until such notice and an executed Assignment and Assumption Agreement are provided to Fannie Mae and Freddie Mac.

B.   Servicer shall notify Fannie Mae as soon as legally possible of any proposed merger, acquisition, or other change of control of Servicer, and of any financial and operational circumstances which may impair Servicer's ability to perform its obligations under the Agreement, in accordance with Sections 8 and 9, provided, however, that Servicer need not execute and deliver an Assignment and Assumption Agreement in the form of Exhibit D in the event that the assignment and assumption occur by operation of law in connection with a merger, acquisition, or other change of control of Servicer and are effective as to all of Servicer's rights and obligations under this Agreement with respect to all of the mortgage loans it services.

C.   The effects of transfers and assignments under this Agreement are as follows:

9

(1)    If the Servicer transfers or assigns all or any portion of its portfolio of mortgage loans or servicing rights to a third party pursuant to an Assignment and Assumption Agreement, only the Eligible Loans must be identified on a schedule to the Assignment and Assumption Agreement.  The transferee or assignee of Servicer's mortgage loans or servicing rights must assume Servicer's obligations under this Agreement only with respect to Eligible Loans, subject to the Service Schedules and the Program Documentation applicable to the Programs in which Servicer agreed to participate prior to the transfer or assignment. Any mortgage loans or servicing rights that (I) are not Eligible Loans at the time of the transfer or assignment, (II) are a part of the transferee's or assignee's existing portfolio prior to the transfer or assignment, or (III) become a part of the transferee's or assignee's portfolio subsequent to such transfer or assignment will become subject to the Programs only if the transferee or assignee has itself executed a Commitment to Purchase Financial Instrument and Servicer Participation Agreement separate and apart from the transfer or assignment involving Servicer and, then, only in accordance therewith.

(2)    If the Servicer transfers or assigns its portfolio of mortgage loans and servicing rights to a third party in connection with a merger, acquisition, or other change of control and the transfer or assignment is effective by operation of law, the transferee or assignee of such mortgage loans and servicing rights must provide servicing with respect to all such mortgage loans and servicing rights (regardless of status at the time of transfer or assignment with respect to Program eligibility) in accordance with this Agreement, subject to the Service Schedules and the Program Documentation applicable to the Programs in which Servicer agreed to participate prior to the transfer or assignment. Any mortgage loans or servicing rights that (I) are a part of the transferee's or assignee's existing portfolio prior to the transfer or assignment, or (II) become a part of the transferee's or assignee's portfolio subsequent to such transfer or assignment will become subject to the Programs only if the transferee or assignee has itself executed a Commitment to Purchase Financial Instrument and Servicer Participation Agreement separate and apart from the transfer or assignment involving Servicer and, then, only in accordance therewith.

(3)    Servicer may not transfer or assign any mortgage loans or servicing rights to any third party in a manner that is intended to circumvent, or has the effect of circumventing, Servicer's obligations under this Agreement.

## 9. Notices

All legal notices under the Agreement shall be in writing and referred to each party's point of contact identified below at the address listed below, or to such other point of contact at such other address as may be designated in writing by such party. All such notices under the Agreement shall be considered received: (a) when personally delivered; (b) when delivered by commercial overnight courier with verification receipt; (c) when sent by confirmed facsimile; or (d) three (3) days after having been sent, postage prepaid, via certified mail, return receipt requested. Notices shall not be made or delivered in electronic form, except as provided in Section 12.B. below, provided, however, that the party giving the notice may send an e-mail to the party receiving the notice advising that party that a notice has been sent by means permitted under this Section.

To Servicer:

Wells Fargo Bank, N.A.

████████████████████████

1 Home Campus
Des Moines, Iowa 50328-0001
████████████████████████████

10

With a copy to:

Wells Fargo Bank, N.A.
Attn: ████████████
1 Home Campus
Des Moines, Iowa 50328-0001
████████████████████████████████
████████████████████████████████

To Fannie Mae:

Fannie Mae
3900 Wisconsin Ave, NW
Washington, DC 20016
████████████████████████

To Treasury:

████████████████████████████
████████████████████████████
Department of Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220
████████████████████████

To Freddie Mac:

Freddie Mac
8100 Jones Branch Drive
McLean, VA 22102
Attn: Vice President, Making Home Affordable – Compliance
████████████████████████████████

## 10. Modifications

A. Subject to Sections 10.B. and 10.C., modifications to the Agreement shall be in writing and signed by Fannie Mae and Servicer.

B. Fannie Mae and the Treasury each reserve the right to unilaterally modify or supplement the terms and provisions of the Program Documentation that relate (as determined by Fannie Mae or the Treasury, in their reasonable discretion) to the

Certified Document Number: 79265486 - Page 11 of 41

compliance and performance requirements of the Programs, and related remedies established by Freddie Mac, and/or to technical, administrative, or procedural matters or compliance and reporting requirements that may impact the administration of the Programs.

C. Notwithstanding Sections 10.A. and 10.B., any modification to the Program Documentation that materially impacts the borrower eligibility requirements, the amount of payments of the Purchase Price to be made to Participating Servicers, Investors and borrowers under any of the Programs in which Servicer participates, or the rights, duties, or obligations of Participating Servicers, Investors or borrowers in connection with any of the Programs in which Servicer participates (each, a "Program Modification" and, collectively, the "Program Modifications") shall be effective only on a prospective basis; Participating Servicers will be afforded the opportunity to opt-out of a modified Program when Program Modifications are published with respect to the Services to be performed by Servicer in connection with the modified Program on or after the effective date of the Program Modification, at Servicer's discretion. Opt-out procedures, including, but not limited to, the time and process for notification of election to opt-out and the window for such election, will be set forth in the Program Documentation describing the Program Modification, provided, however, that Servicer will be given at least thirty (30) days to elect to opt-out of a Program Modification. For the avoidance of doubt, during the period during which Servicer may elect to opt-out of a Program Modification and after any such opt-out is elected by Servicer, Servicer will continue to perform the Services described in the Financial Instrument and the Program Documentation (as the Program Documentation existed immediately prior to the publication of the Program Modification prompting the opt-out) with respect to any Services that Servicer had already begun to perform prior to the opt-out.

## 11. Miscellaneous

A. The Agreement shall be governed by and construed under Federal law and not the law of any state or locality, without reference to or application of the conflicts of law principles. Any and all disputes between the parties that cannot be settled by mutual agreement shall be resolved solely and exclusively in the United States Federal courts located within the District of Columbia. Both parties consent to the jurisdiction and venue of such courts and irrevocably waive any objections thereto.

B. The Agreement is not a Federal procurement contract and is therefore not subject to the provisions of the Federal Property and Administrative Services Act (41 U.S.C. §§ 251-260), the Federal Acquisition Regulations (48 CFR Chapter 1), or any other Federal procurement law.

C. Any provision of the Agreement that is determined to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of the Agreement, and no such prohibition or unenforceability in any jurisdiction shall invalidate such provision in any other jurisdiction.

D. Failure on the part of Fannie Mae to insist upon strict compliance with any of the terms hereof shall not be deemed a waiver, nor will any waiver hereunder at any time be deemed a waiver at any other time. No waiver will be valid unless in writing and signed by an authorized officer of Fannie Mae. No failure by Fannie Mae to exercise any right, remedy, or power hereunder will operate as a waiver thereof. The rights, remedies, and powers provided herein are cumulative and not exhaustive of any rights, remedies, and powers provided by law.

E. The Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest.

F. The Commitment, the Service Schedule(s) and the Assignment and Assumption Agreement (if applicable) may be executed in two or more counterparts (and by different parties on separate counterparts), each of which shall be an original, but all of which together shall constitute one and the same instrument.

Certified Document Number: 79265486 - Page 12 of 41

G. The Commitment, together with the Service Schedule(s), the Financial Instrument, the Certifications, the Assignment and Assumption Agreement (if applicable) and the Program Documentation, constitutes the entire agreement of the parties with respect to the subject matter hereof. In the event of a conflict between any of the foregoing documents and the Program Documentation, the Program Documentation shall prevail. In the event of a conflict between the Program Guidelines and the Supplemental Directives, the Program Guidelines shall prevail.

H. Any provisions of the Agreement (including all documents incorporated by reference thereto) that contemplate their continuing effectiveness, including, but not limited to, Sections 4, 5.B., 6, 8, 9, 11 and 12 of the Commitment, and Sections 2, 3, 5, 7, 8, 9 and 10 of the Financial Instrument, and any other provisions (or portions thereof) in the Agreement that relate to, or may impact, the ability of Fannie Mae and Freddie Mac to fulfill their responsibilities as agents of the United States in connection with the Programs, shall survive the expiration or termination of the Agreement.

## 12. Defined Terms; Incorporation by Reference; Effect of Amendment and Restatement

A. All references to the "Agreement" necessarily include, in all instances, the Commitment and all documents incorporated into the Commitment by reference, whether or not so noted contextually, and all amendments and modifications thereto. Specific references throughout the Agreement to individual documents that are incorporated by reference into the Commitment are not inclusive of any other documents that are incorporated by reference, unless so noted contextually.

B. The term "Effective Date" means the date on which Fannie Mae transmits a copy of the fully executed Commitment, Initial Service Schedule(s) and Financial Instrument to Treasury and Servicer with a completed cover sheet, in the form attached hereto as Exhibit E (the "Cover Sheet"); the Agreement shall be effective on the Effective Date. Any Additional Service Schedules that are executed and delivered to Fannie Mae after the Effective Date of the Agreement shall be also be accompanied by a completed Cover Sheet and shall be effective on the effective date or dates set forth therein. All executed documents and accompanying Cover Sheets will be faxed, emailed, or made available through other electronic means to Treasury and Servicer in accordance with Section 9.

C. The Program Documentation and Exhibit A – Service Schedule(s) (Service Schedule A-1, et seq.), Exhibit B – Form of Financial Instrument, Exhibit C – Form of Certification, Exhibit D – Form of Assignment and Assumption Agreement and Exhibit E – Form of Cover Sheet (in each case, in form and, upon completion, in substance), including all amendments and modifications thereto, are incorporated into this Commitment by this reference and given the same force and effect as though fully set forth herein.

D. The Prior Agreement is amended and restated in its entirety, and all of the terms and conditions of the Prior Agreement are superseded by the terms and conditions of this Agreement, effective as of the Effective Date of this Agreement.

[SIGNATURE PAGE FOLLOWS; REMAINDER OF PAGE
INTENTIONALLY LEFT BLANK]

In Witness Whereof, Servicer and Fannie Mae by their duly authorized officials hereby execute and deliver this Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement as of the Effective Date.

SERVICER: Wells Fargo Bank, N.A.

By _____

Name: MICHAEL J HEID

Title: EVP

Date: 3-16-10

FANNIE MAE, solely as Financial Agent of the United States

Name: Terence Edward P

Title: EVP-CFM

Date: 3-19-10

### EXHIBITS

Exhibit A        Service Schedule(s)

Exhibit B        Form of Financial Instrument

Exhibit C        Form of Certification

Exhibit D        Form of Assignment and Assumption Agreement

Exhibit E        Form of Cover Sheet

## EXHIBIT A

## SERVICE SCHEDULE(S)

The attached Service Schedules together comprise Exhibit A to that certain Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement (the "Commitment"), entered into as of the Effective Date, by and between Federal National Mortgage Association ("Fannie Mae"), a federally chartered corporation, acting as financial agent of the United States, and the undersigned party ("Servicer").

Each of the Service Schedules attached hereto is effective as of the Effective Date, or on such other date or dates as may be specified therein. All of the capitalized terms that are used but not defined in the Service Schedules shall have the meanings ascribed to them in the Commitment.

Exhibit A is deemed to be amended to include all Additional Service Schedules (if any) that are executed and delivered by the parties after the Effective Date in accordance with the Agreement, without any further action on the part of the parties hereto.

## SERVICE SCHEDULE A-1

This Service Schedule is appended to that certain Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement (the "Commitment"), entered into as of the Effective Date, by and between Federal National Mortgage Association ("Fannie Mae"), a federally chartered corporation, acting as financial agent of the United States, and the undersigned party ("Servicer"), and, together with all other Services Schedules appended thereto (if any), constitutes Exhibit A to the Commitment.

All of the capitalized terms that are used but not defined below shall have the meanings ascribed to them in the Commitment or in applicable Program Documentation.

    1. Program Name:

Servicer hereby elects to participate in the following Program:

**Home Affordable Modification Program (HAMP)**

    2. Description of Program Services:

All services required to be performed by a participating servicer as set forth in the Program Documentation for the Home Affordable Modification Program under the Emergency Economic Stabilization Act of 2008, as amended, including, but not limited to, obligations relating to the modification of first lien mortgage loans and the provision of loan modification and foreclosure prevention services relating thereto.

    3. Effective date of Service Schedule:

    **This Service Schedule is executed and delivered contemporaneously with the Commitment; accordingly, the effective date of this Service Schedule is the Effective Date of the Agreement.**

In Witness Whereof, Servicer and Fannie Mae by their duly authorized officials hereby execute and deliver this Service Schedule as of the effective date of the Service Schedule set forth above.

SERVICER: Wells Fargo Bank, N.A.

FANNIE MAE, solely as Financial Agent of the United States

Name: MICHAEL J HEID
Title: EVP
Date: 3-16-10

Name: Terrence Edwards
Title: EVP-CPM
Date: 3-19-10

A-1

Certified Document Number: 79265486 - Page 16 of 41

## SERVICE SCHEDULE A-2

This Service Schedule is appended to that certain Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement (the "Commitment"), entered into as of the Effective Date, by and between Federal National Mortgage Association ("Fannie Mae"), a federally chartered corporation, acting as financial agent of the United States, and the undersigned party ("Servicer"), and, together with all other Services Schedules appended thereto (if any), constitutes Exhibit A to the Commitment.

All of the capitalized terms that are used but not defined below shall have the meanings ascribed to them in the Commitment or in applicable Program Documentation.

### 1. Program Name:

Servicer hereby elects to participate in the following Program(s):

**Second Lien Modification Program**

### 2. Description of Program Services:

All services required to be performed by a participating servicer as set forth in the Program Documentation for the Second Lien Modification Program under the Emergency Economic Stabilization Act of 2008, as amended, including, but not limited to, obligations relating to the modification or extinguishment of second lien mortgage loans and the provision of loan modification and foreclosure prevention services relating thereto.

### 3. Effective date of Service Schedule:

**This Service Schedule is executed and delivered contemporaneously with the Commitment; accordingly, the effective date of this Service Schedule is the Effective Date of the Agreement.**

In Witness Whereof, Servicer and Fannie Mae by their duly authorized officials hereby execute and deliver this Service Schedule as of the effective date of the Service Schedule set forth above.

SERVICER: Wells Fargo Bank, N.A.

FANNIE MAE, solely as Financial Agent of the United States

Name: MICHAEL J HEID
Title: EVP
Date: 3-16-10

Name: Terence Edwards
Title: EVP-CPM
Date: 3-19-10

A-2

Certified Document Number: 79265486 - Page 17 of 41

## SERVICE SCHEDULE A-3

This Service Schedule is appended to that certain Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement (the "Commitment"), entered into as of the Effective Date, by and between Federal National Mortgage Association ("Fannie Mae"), a federally chartered corporation, acting as financial agent of the United States, and the undersigned party ("Servicer"), and, together with all other Services Schedules appended thereto (if any), constitutes Exhibit A to the Commitment.

All of the capitalized terms that are used but not defined below shall have the meanings ascribed to them in the Commitment or in applicable Program Documentation.

1. **Program Name:**

Servicer hereby elects to participate in the following Program(s):

**Treasury Federal Housing Administration - Home Affordable Modification Program (Treasury FHA-HAMP)**

2. **Description of Program Services:**

All services required to be performed by a participating servicer relating to Treasury FHA-HAMP, as set forth in guidance issued by the Federal Housing Administration from time to time, including Mortgagee Letter 2009-23, 2009-35, 2010-04 and 2010-10, and in the Program Documentation for including Treasury FHA-HAMP in the Home Affordable Modification Program under the Emergency Economic Stabilization Act of 2008, as amended, including, but not limited to, obligations relating to the modification of first lien mortgage loans insured by the Federal Housing Administration and the provision of loan modification and foreclosure prevention services relating thereto.

3. **Effective date of Service Schedule:**

**This Service Schedule is executed and delivered contemporaneously with the Commitment; accordingly, the effective date of this Service Schedule is the Effective Date of the Agreement.**

In Witness Whereof, Servicer and Fannie Mae by their duly authorized officials hereby execute and deliver this Service Schedule as of the effective date of the Service Schedule set forth above.

SERVICER: Wells Fargo Bank, N.A.

Name: Michael J. Heid
Title: Executive Vice President
Date: September 23, 2010

FANNIE MAE, solely as Financial Agent of the United States

Name: MALLOY / EVANS
Title: VP ; Deputy General Counsel
Date: 9/30/10

A-3

Certified Document Number: 79265486 - Page 18 of 41

# SERVICE SCHEDULE A-4

This Service Schedule is appended to that certain Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement (the "Commitment"), entered into as of the Effective Date, by and between Federal National Mortgage Association ("Fannie Mae"), a federally chartered corporation, acting as financial agent of the United States, and the undersigned party ("Servicer"), and, together with all other Services Schedules appended thereto (if any), constitutes Exhibit A to the Commitment.

All of the capitalized terms that are used but not defined below shall have the meanings ascribed to them in the Commitment or in applicable Program Documentation.

## 1. Program Name:

Servicer hereby elects to participate in the following Program(s):

Treasury/FHA-Second Lien Program (FHA2LP)

## 2. Description of Program Services:

All services required to be performed by a participating servicer relating to FHA2LP, as set forth in the Program Documentation for FHA2LP in the Making Home Affordable Program under the Emergency Economic Stabilization Act of 2008, as amended.

## 3. Effective date of Service Schedule:

This Service Schedule is executed and delivered contemporaneously with the Commitment; accordingly, the effective date of this Service Schedule is the Effective Date of the Agreement.

## 4. Opt-Out Right:

For the avoidance of doubt, issuance of an FHA2LP Program Modification requiring mandatory second lien principal forgiveness shall afford Servicer the opportunity to opt-out of FHA2LP in accordance with section 10.C. of the Agreement. Servicer shall have thirty (30) calendar days from the date any such Program Modification is published to make an opt-out election.

In Witness Whereof, Servicer and Fannie Mae by their duly authorized officials hereby execute and deliver this Service Schedule as of the effective date of the Service Schedule set forth above.

| SERVICER: Wells Fargo Bank, N.A. | FANNIE MAE, solely as Financial Agent of the United States |
|---|---|
| Name: MICHAEL J HEID | Name: MALLOY EVANS |
| Title: EVP | Title: VP : Deputy General Counsel |
| Date: 9/20/2010 | Date: 9/30/10 |

A-4

Certified Document Number: 79265486 - Page 19 of 41

## SERVICE SCHEDULE A-5

This Service Schedule is appended to that certain Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement (the "Commitment"), entered into as of the Effective Date, by and between Federal National Mortgage Association ("Fannie Mae"), a federally chartered corporation, acting as financial agent of the United States, and the undersigned party ("Servicer"), and, together with all other Services Schedules appended thereto (if any), constitutes Exhibit A to the Commitment.

All of the capitalized terms that are used but not defined below shall have the meanings ascribed to them in the Commitment or in applicable Program Documentation.

### 1. Program Name:

Servicer hereby elects to participate in the following Program(s):

**US Department of Agriculture – Rural Housing Service Home Affordable Modification Program (RD-HAMP)**

### 2. Description of Program Services:

All services required to be performed by a participating servicer relating to RD-HAMP, as set forth in guidance issued by the Rural Housing Service (RHS) from time to time; including the final rule published on RHS's Guaranteed Single Family Housing Loans in 75 FR 52,429, August 26, 2010, and in the Program Documentation for including RD-HAMP in the Home Affordable Modification Program under the Emergency Economic Stabilization Act of 2008, as amended, including, but not limited to, obligations relating to the modification of first lien mortgage loans insured by RHS and the provision of loan modification and foreclosure prevention services relating thereto.

### 3. Effective date of Service Schedule:

**This Service Schedule is executed and delivered contemporaneously with the Commitment; accordingly, the effective date of this Service Schedule is the Effective Date of the Agreement.**

In Witness Whereof, Servicer and Fannie Mae by their duly authorized officials hereby execute and deliver this Service Schedule as of the effective date of the Service Schedule set forth above.

| SERVICER: Wells Fargo Bank, N.A. | FANNIE MAE, solely as Financial Agent of the United States |
|---|---|
| Name: Michael J. Heid | Name: Milloy Evans |
| Title: Executive Vice President | Title: VP & Deputy General Counsel |
| Date: September 23, 2010 | Date: 9/30/10 |

A-5

**EXHIBIT B**

**FORM OF FINANCIAL INSTRUMENT**

## FINANCIAL INSTRUMENT

This Financial Instrument is delivered as provided in Section 1 of the Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement (the "Commitment"), entered into as of the Effective Date, by and between Federal National Mortgage Association ("Fannie Mae"), a federally chartered corporation, acting as financial agent of the United States, and the undersigned party ("Servicer"). This Financial Instrument is effective as of the Effective Date. All of the capitalized terms that are used but not defined herein shall have the meanings ascribed to them in the Commitment.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Servicer agrees as follows:

1.      Purchase Price Consideration; Services. This Financial Instrument is being purchased by Fannie Mae pursuant to Section 4 of the Commitment in consideration for the payment by Fannie Mae, in its capacity as a financial agent of the United States, of various payments detailed in the Program Documentation and referred to collectively in the Commitment as the "Purchase Price."

    (a)   The conditions precedent to the payment by Fannie Mae of the Purchase Price with respect to the Services described on the Initial Service Schedules are: (i) the execution and delivery of this Financial Instrument, the Commitment and the Initial Service Schedules by Servicer to Fannie Mae; (ii) the execution and delivery of the Commitment and the Initial Service Schedules by Fannie Mae to Servicer; (iii) the delivery of copies of the fully executed Commitment, Initial Service Schedules and Financial Instrument to Treasury on the Effective Date of the Agreement; (iv) the performance by Servicer of the Services described in the Agreement; and (v) the satisfaction by Servicer of such other obligations as are set forth in the Agreement. Servicer shall perform all Services in consideration for the Purchase Price in accordance with the terms and conditions of the Agreement, to the reasonable satisfaction of Fannie Mae and Freddie Mac.

    (b)   The conditions precedent to the payment by Fannie Mae of the Purchase Price with respect to the Services described on the Additional Service Schedules (if any) are: (i) the execution and delivery of the Additional Service Schedules and the Certification by Servicer to Fannie Mae; (ii) the execution and delivery of the Additional Service Schedules by Fannie Mae to Servicer; (iii) the delivery of copies of the fully executed Additional Service Schedules to Treasury; (iv) the performance by Servicer of the Services described in the Agreement, in accordance with the terms and conditions thereof, to the reasonable satisfaction of Fannie Mae and Freddie Mac; and (v) the satisfaction by Servicer of such other obligations as are set forth in the Agreement.

2.      Authority and Agreement to Participate in Program. Subject to the limitations set forth in Section 2 of the Agreement, Servicer shall use reasonable efforts to remove all prohibitions or impediments to its authority and to obtain all third party consents, waivers and delegations that are required, by contract or law, in order to perform the Services.

3.      Audits, Reporting and Data Retention.

    (a)   Freddie Mac, the Federal Housing Finance Agency and other parties designated by the Treasury or applicable law shall have the right during normal business hours to conduct unannounced, informal onsite visits and to conduct formal onsite and offsite physical, personnel and information technology testing, security reviews, and audits of Servicer and to examine all books, records and data related to the Services provided and Purchase Price received in connection with each of the Programs in which Servicer participates on thirty (30) days' prior written notice.

Certified Document Number: 79265486 - Page 22 of 41

(b) Servicer will collect, record, retain and provide to Treasury, Fannie Mae and Freddie Mac all data, information and documentation relating to the Programs in which Servicer participates as required by applicable Program Documentation. All such data, information and documentation must be provided to the Treasury, Fannie Mae and Freddie Mac as, when and in the manner specified in applicable Program Documentation. In addition, Servicer shall provide copies of executed contracts and tapes of loan pools related to the Programs for review upon request.

(c) Servicer shall promptly take corrective and remedial actions associated with reporting and reviews as directed by Fannie Mae or Freddie Mac and provide to Fannie Mae and Freddie Mac such evidence of the effective implementation of corrective and remedial actions as Fannie Mae and Freddie Mac shall reasonably require. Freddie Mac may conduct additional reviews based on its findings and the corrective actions taken by Servicer.

(d) In addition to any other obligation to retain financial and accounting records that may be imposed by Federal or state law, Servicer shall retain all information described in Section 3(b), and all data, books, reports, documents, audit logs and records, including electronic records, related to the performance of Services in connection with the Programs. In addition, Servicer shall maintain a copy of all computer systems and application software necessary to review and analyze these electronic records. Unless otherwise directed by Fannie Mae or Freddie Mac, Servicer shall retain these records for at least 7 years from the date the data or record was created, or for such longer period as may be required pursuant to applicable law. Fannie Mae or Freddie Mac may also notify Servicer from time to time of any additional record retention requirements resulting from litigation and regulatory investigations in which the Treasury or any agents of the United States may have an interest, and Servicer agrees to comply with these litigation and regulatory investigations requirements.

4.   Internal Control Program.

(a) Servicer shall develop, enforce and review on a quarterly basis for effectiveness an internal control program designed to: (i) ensure effective delivery of Services in connection with the Programs in which Servicer participates and compliance with applicable Program Documentation; (ii) effectively monitor and detect loan modification fraud; and (iii) effectively monitor compliance with applicable consumer protection and fair lending laws. The internal control program must include documentation of the control objectives for Program activities, the associated control techniques, and mechanisms for testing and validating the controls.

(b) Servicer shall provide Freddie Mac with access to all internal control reviews and reports that relate to Services under the Programs performed by Servicer and its independent auditing firm to enable Freddie Mac to fulfill its duties as a compliance agent of the United States; a copy of the reviews and reports will be provided to Fannie Mae for record keeping and other administrative purposes.

5.   Representations, Warranties and Covenants. Servicer makes the following representations, warranties and covenants to Fannie Mae, Freddie Mac and the Treasury, the truth and accuracy of which are continuing obligations of Servicer. In the event that any of the representations, warranties, or covenants made herein cease to be true and correct, Servicer agrees to notify Fannie Mae and Freddie Mac immediately.

(a) Servicer is established under the laws of the United States or any state, territory, or possession of the United States or the District of Columbia, and has significant operations in the United States. Servicer has full corporate power and authority to enter into, execute, and deliver the Agreement

Certified Document Number: 79265486 - Page 23 of 41

and to perform its obligations hereunder and has all licenses necessary to carry on its business as now being conducted and as contemplated by the Agreement.

(b) Servicer is in compliance with, and covenants that all Services will be performed in compliance with, all applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements, including, but not limited to, the Truth in Lending Act, 15 USC 1601 § et seq., the Home Ownership and Equity Protection Act, 15 USC § 1639, the Federal Trade Commission Act, 15 USC § 41 et seq., the Equal Credit Opportunity Act, 15 USC § 701 et seq., the Fair Credit Reporting Act, 15 USC § 1681 et seq., the Fair Housing Act and other Federal and state laws designed to prevent unfair, discriminatory or predatory lending practices and all applicable laws governing tenant rights. Subject to the following sentence, Servicer has obtained or made, or will obtain or make, all governmental approvals or registrations required under law and has obtained or will obtain all consents necessary to authorize the performance of its obligations under the Programs in which Servicer participates and the Agreement. The performance of Services under the Agreement will not conflict with, or be prohibited in any way by, any other agreement or statutory restriction by which Servicer is bound, provided, however, that Fannie Mae acknowledges and agrees that this representation and warranty is qualified solely by and to the extent of any contractual limitations established under applicable pooling and servicing agreements and other servicing contracts to which Servicer is subject. Servicer is not aware of any other legal or financial impediments to performing its obligations under the Programs in which Servicer participates or the Agreement and shall promptly notify Fannie Mae of any financial and/or operational impediments which may impair its ability to perform its obligations under such Programs or the Agreement. Servicer is not delinquent on any Federal tax obligation or any other debt owed to the United States or collected by the United States for the benefit of others, excluding any debt or obligation that is being contested in good faith.

(c) Servicer covenants that: (i) it will perform its obligations in accordance with the Agreement and will promptly provide such performance reporting as Fannie Mae may reasonably require; (ii) all Services will be offered to borrowers, fully documented and serviced , or otherwise performed, in accordance with the applicable Program Documentation; and (iii) all data, collection information and other information reported by Servicer to Fannie Mae and Freddie Mac under the Agreement, including, but not limited to, information that is relied upon by Fannie Mae or Freddie Mac in calculating the Purchase Price or in performing any compliance review will be true, complete and accurate in all material respects, and consistent with all relevant business records, as and when provided.

(d) Servicer covenants that it will: (i) perform the Services required under the Program Documentation and the Agreement in accordance with the practices, high professional standards of care, and degree of attention used in a well-managed operation, and no less than that which the Servicer exercises for itself under similar circumstances; and (ii) use qualified individuals with suitable training, education, experience and skills to perform the Services. Servicer acknowledges that Program participation may require changes to, or the augmentation of, its systems, staffing and procedures, and covenants and agrees to take all actions necessary to ensure it has the capacity to implement the Programs in which it participates in accordance with the Agreement.

(e) Servicer covenants that it will comply with all regulations on conflicts of interest that are applicable to Servicer in connection with the conduct of its business and all conflicts of interest and non-disclosure obligations and restrictions and related mitigation procedures set forth in the Program Documentation (if any), as they relate to the Programs in which Servicer participates.

Certified Document Number: 79265486 - Page 24 of 41

(f) Servicer acknowledges that the provision of false or misleading information to Fannie Mae or Freddie Mac in connection with any of the Programs or pursuant to the Agreement may constitute a violation of: (a) Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 of the United States Code; or (b) the civil False Claims Act (31 U.S.C. §§ 3729-3733). Servicer covenants to disclose to Fannie Mae and Freddie Mac any credible evidence, in connection with the Services, that a management official, employee, or contractor of Servicer has committed, or may have committed, a violation of the referenced statutes.

(g) Servicer covenants to disclose to Fannie Mae and Freddie Mac any other facts or information that the Treasury, Fannie Mae or Freddie Mac should reasonably expect to know about Servicer and its contractors to help protect the reputational interests of the Treasury, Fannie Mae and Freddie Mac in managing and monitoring the Programs in which Servicer participates.

(h) Servicer covenants that it will timely inform Fannie Mae and Freddie Mac of any anticipated Event of Default and of any Act of Bad Faith of which it becomes aware.

(i) Servicer acknowledges that Fannie Mae or Freddie Mac may be required to assist the Treasury with responses to the Privacy Act of 1974 (the "Privacy Act"), 5 USC § 552a, inquiries from borrowers and Freedom of Information Act, 5 USC § 552, inquiries from other parties, as well as formal inquiries from Congressional committees and members, the Government Accounting Office, Inspectors General and other government entities, as well as media and consumer advocacy group inquiries about the Programs and their effectiveness. Servicer covenants that it will respond promptly and accurately to all search requests made by Fannie Mae or Freddie Mac, comply with any related procedures which Fannie Mae or Freddie Mac may establish, and provide related training to employees and contractors. In connection with Privacy Act inquiries, Servicer covenants that it will provide updated and corrected information as appropriate about borrowers' records to ensure that any system of record maintained by Fannie Mae on behalf of the Treasury is accurate and complete.

(j) Servicer acknowledges that Fannie Mae is required to develop and implement customer service call centers to respond to borrowers' and other parties' inquiries regarding the Programs, which may require additional support from Servicer. Servicer covenants that it will provide such additional customer service call support as Fannie Mae reasonably determines is necessary to support the Programs in which Servicer participates.

(k) Servicer acknowledges that Fannie Mae and/or Freddie Mac are required to develop and implement practices to monitor and detect loan modification fraud and to monitor compliance with applicable consumer protection and fair lending laws. Servicer covenants that it will fully and promptly cooperate with Fannie Mae's inquiries about loan modification fraud and legal compliance and comply with any anti-fraud and legal compliance procedures which Fannie Mae and/or Freddie Mac may require. Servicer covenants that it will develop and implement an internal control program to monitor and detect loan modification fraud and to monitor compliance with applicable consumer protection and fair lending laws, among other things, as provided in Section 4 of this Financial Instrument and acknowledges that the internal control program will be monitored, as provided in such Section.

(l) Servicer shall sign and deliver a Certification to Fannie Mae and Freddie Mac beginning on June 1, 2010 and again on June 1 of each year thereafter during the Term, and upon the execution and

Certified Document Number: 79265486 - Page 25 of 41

delivery by Servicer of Additional Service Schedule(s) (if any) during the Term, in each case in the form attached as <u>Exhibit C</u> to the Agreement.

(m) Solely if Servicer has elected to participate in the Second Lien Modification Program by executing and delivering to Fannie Mae a Service Schedule relating thereto, Servicer represents, warrants and covenants that each mortgage loan it modifies under the Second Lien Modification Program is, or will be at the time of modification, a lien that is second in priority relative to the first lien that was modified under the Programs.

6. <u>Use of Contractors</u>. Servicer is responsible for the supervision and management of any contractor that assists in the performance of Services in connection with the Programs in which Servicer participates. Servicer shall remove and replace any contractor that fails to perform. Servicer shall ensure that all of its contractors comply with the terms and provisions of the Agreement. Servicer shall be responsible for the acts or omissions of its contractors as if the acts or omissions were by the Servicer.

7. <u>Data Rights</u>.

(a) For purposes of this Section, the following definitions apply:

(i) "<u>Data</u>" means any recorded information, regardless of form or the media on which it may be recorded, regarding any of the Services provided in connection with the Programs.

(ii) "<u>Limited Rights</u>" means non-exclusive rights to, without limitation, use, copy, maintain, modify, enhance, disclose, reproduce, prepare derivative works, and distribute, in any manner, for any purpose related to the administration, activities, review, or audit of, or public reporting regarding, the Programs and to permit others to do so in connection therewith.

(iii) "<u>NPI</u>" means nonpublic personal information, as defined under the GLB.

(iv) "<u>GLB</u>" means the Gramm-Leach-Bliley Act, 15 U.S.C. 6801-6809.

(b) Subject to Section 7(c) below, Treasury, Fannie Mae and Freddie Mac shall have Limited Rights, with respect to all Data produced, developed, or obtained by Servicer or a contractor of Servicer in connection with the Programs, provided, however, that NPI will not be transferred by Fannie Mae in violation of the GLB and, provided, further, that Servicer acknowledges and agrees that any use of NPI by, the distribution of NPI to, or the transfer of NPI among, Federal, state and local government organizations and agencies does not constitute a violation of the GLB for purposes of the Agreement. If requested, such Data shall be made available to the Treasury, Fannie Mae, or Freddie Mac upon request, or as and when directed by the Program Documentation relating to the Programs in which Servicer participates, in industry standard useable format.

(c) Servicer expressly consents to the publication of its name as a participant in the Programs listed on the Service Schedules, and the use and publication of Servicer's Data, subject to applicable state and federal laws regarding confidentiality, in any form and on any media utilized by Treasury, Fannie Mae or Freddie Mac, including, but not limited to, on any website or webpage hosted by Treasury, Fannie Mae, or Freddie Mac, in connection with such Programs, provided that no Data placed in the public domain: (i) will contain the name, social security number, or street address of any borrower or other information that would allow the borrower to be

Certified Document Number: 79265486 - Page 26 of 41

identified; or, (ii) will, if presented in a form that links the Servicer with the Data, include (x) information other than program performance and participation related statistics, such as the number of modifications or extinguishments, performance of modifications, characteristics of the modified loans, or program compensation or fees, or (y) any information about any borrower other than creditworthiness characteristics such as debt, income, and credit score. In any Data provided to an enforcement or supervisory agency with jurisdiction over the Servicer, these limitations on borrower information shall not apply.

8.   Publicity and Disclosure.

   (a) Servicer shall not make use of any Treasury name, symbol, emblem, program name, or product name, in any advertising, signage, promotional material, press release, Web page, publication, or media interview, without the prior written consent of the Treasury.

   (b) Servicer shall not publish, or cause to have published, or make public use of Fannie Mae's name, logos, trademarks, or any information about its relationship with Fannie Mae without the prior written permission of Fannie Mae, which permission may be withdrawn at any time in Fannie Mae's sole discretion.

   (c) Servicer shall not publish, or cause to have published, or make public use of Freddie Mac's name (i.e., "Freddie Mac" or "Federal Home Loan Mortgage Corporation"), logos, trademarks, or any information about its relationship with Freddie Mac without the prior written permission of Freddie Mac, which permission may be withdrawn at any time in Freddie Mac's sole discretion.

9.   Limitation of Liability.  IN NO EVENT SHALL FANNIE MAE, THE TREASURY, OR FREDDIE MAC, OR THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR AFFILIATES BE LIABLE TO SERVICER WITH RESPECT TO ANY OF THE PROGRAMS OR THE AGREEMENT, OR FOR ANY ACT OR OMISSION OCCURRING IN CONNECTION WITH THE FOREGOING, FOR ANY DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO DIRECT DAMAGES, INDIRECT DAMAGES, LOST PROFITS, LOSS OF BUSINESS, OR OTHER INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES OF ANY NATURE OR UNDER ANY LEGAL THEORY WHATSOEVER, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND REGARDLESS OF WHETHER OR NOT THE DAMAGES WERE REASONABLY FORESEEABLE; PROVIDED, HOWEVER, THAT THIS PROVISION SHALL NOT LIMIT FANNIE MAE'S OBLIGATION TO REMIT PURCHASE PRICE PAYMENTS TO SERVICER IN ITS CAPACITY AS FINANCIAL AGENT OF THE UNITED STATES IN ACCORDANCE WITH THE AGREEMENT.

10.   Indemnification.  Servicer shall indemnify, hold harmless, and pay for the defense of Fannie Mae, the Treasury and Freddie Mac, and their respective officers, directors, employees, agents and affiliates against all claims, liabilities, costs, damages, judgments, suits, actions, losses and expenses, including reasonable attorneys' fees and costs of suit, arising out of or resulting from: (a) Servicer's breach of Section 5 (Representations, Warranties and Covenants) of this Financial Instrument; (b) Servicer's negligence, willful misconduct or failure to perform its obligations under the Agreement; or (c) any injuries to persons (including death) or damages to property caused by the negligent or willful acts or omissions of Servicer or its contractors. Servicer shall not settle any suit or claim regarding any of the foregoing without Fannie Mae's prior written consent if such settlement would be adverse to Fannie Mae's interest, or the interests of the Treasury or Freddie Mac. Servicer agrees to pay or reimburse all costs that may be incurred by Fannie Mae and Freddie Mac in enforcing this indemnity, including attorneys' fees.

Certified Document Number: 79265486 - Page 27 of 41

IN WITNESS WHEREOF, Servicer hereby executes this Financial Instrument on the date set forth below.

Wells Fargo Bank, N.A.:

[Name of Authorized Official] MICHAEL J    3-16-10
[Title of Authorized Official]   EVP        Date

Certified Document Number: 79265486 - Page 28 of 41

## EXHIBIT C

## FORM OF CERTIFICATION

## CERTIFICATION

This Certification is delivered as provided in Section 1.C. of the Amended and Restated Commitment to Purchase Financial Instrument and Service Participation Agreement (the "Commitment"), effective as of [INSERT], by and between Federal National Mortgage Association ("Fannie Mae"), federally chartered corporation, acting as financial agent of the United States, and the undersigned party ("Servicer"). All terms used, but no defined herein, shall have the meanings ascribed to them in the Commitment.

Servicer hereby certifies, as of [INSERT DATE ON WHICH CERTIFICATION IS GIVEN], that:

1.     Servicer is established under the laws of the United States or any state, territory, or possession of the United States or the District of Columbia, and has significant operations in the United States. Servicer had full corporate power and authority to enter into, execute, and deliver the Agreement and to perform its obligations hereunder and has all licenses necessary to carry on its business as now being conducted and as contemplated by the Agreement.

2.     Servicer is in compliance with, and certifies that all Services have been performed in compliance with, all applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements, including, but not limited to, the Truth in Lending Act, 15 USC 1601 § et seq., the Home Ownership and Equity Protection Act, 15 USC § 1639, the Federal Trade Commission Act, 15 USC § 41 et seq., the Equal Credit Opportunity Act, 15 USC § 701 et seq., the Fair Credit Reporting Act, 15 USC § 1681 et seq., the Fair Housing Act and other Federal and state laws designed to prevent unfair, discriminatory or predatory lending practices and all applicable laws governing tenant rights. Subject to the following sentence, Servicer has obtained or made all governmental approvals or registrations required under law and has obtained all consents necessary to authorize the performance of its obligations under the Programs in which Servicer participated and the Agreement. The performance of Services under the Agreement has not conflicted with, or been prohibited in any way by, any other agreement or statutory restriction by which Servicer is bound, except to the extent of any contractual limitations under applicable pooling and servicing agreements and other servicing contracts to which Servicer is subject. Servicer is not aware of any other legal or financial impediments to performing its obligations under the Programs or the Agreement and has promptly notified Fannie Mae of any financial and/or operational impediments which may impair its ability to perform its obligations under the Programs or the Agreement. Servicer is not delinquent on any Federal tax obligation or any other debt owed to the United States or collected by the United States for the benefit of others, excluding any debts or obligations that are being contested in good faith.

3.     (i) Servicer has performed its obligations in accordance with the Agreement and has promptly provided such performance reporting as Fannie Mae and Freddie Mac have reasonably required; (ii) all Services have been offered by Servicer to borrowers, fully documented and serviced by Servicer in accordance with the applicable Program Documentation; and (iii) all data, collection information and other information reported by Servicer to Fannie Mae and Freddie Mac under the Agreement, including, but not limited to, information that was relied upon by Fannie Mae and Freddie Mac in calculating the Purchase Price and in performing any compliance review, was true, complete and accurate in all material respects, and consistent with all relevant business records, as and when provided.

4.     Servicer has: (i) performed the Services required under the Program Documentation and the Agreement in accordance with the practices, high professional standards of care, and degree of attention used in a well-managed operation, and no less than that which the Servicer exercises for itself under similar circumstances; and (ii) used qualified individuals with suitable training, education, experience and skills to perform the Services. Servicer acknowledges that Program participation required changes to, or the augmentation of, its systems, staffing and procedures; Servicer took all actions necessary to ensure that it had the capacity to implement the Programs in which it participated in accordance with the Agreement.

5.     Servicer has complied with all regulations on conflicts of interest that are applicable to Servicer in connection with the conduct of its business and all conflicts of interest and non-disclosure obligations and restrictions and related mitigation procedures set forth in the Program Documentation (if any), as they related to the Programs in which Servicer participated.

6.     Servicer acknowledges that the provision of false or misleading information to Fannie Mae or Freddie Mac in connection with the Programs or pursuant to the Agreement may constitute a violation of: (a) Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 of the United States Code; or (b) the civil False Claims Act (31 U.S.C. §§ 3729-3733). Servicer has disclosed to Fannie Mae and Freddie Mac any credible evidence, in connection with the Services, that a management official, employee, or contractor of Servicer has committed, or may have committed, a violation of the referenced statutes.

Certified Document Number: 79265486 - Page 30 of 41

7.     Servicer has disclosed to Fannie Mae and Freddie Mac any other facts or information that the Treasury, Fannie Mae or Freddie Mac should reasonably expect to know about Servicer and its contractors to help protect the reputational interests of the Treasury, Fannie Mae and Freddie Mac in managing and monitoring the Programs.

8.     Servicer acknowledges that Fannie Mae and Freddie Mac may be required to assist the Treasury with responses to the Privacy Act of 1974 (the "Privacy Act"), 5 USC § 552a, inquiries from borrowers and Freedom of Information Act, 5 USC § 552, inquiries from other parties, as well as formal inquiries from Congressional committees and members, the Government Accounting Office, Inspectors General and other government entities, as well as media and consumer advocacy group inquiries about the Programs and their effectiveness. Servicer has responded promptly and accurately to all search requests made by Fannie Mae and Freddie Mac, complied with any related procedures which Fannie Mae and Freddie Mac have established, and provided related training to employees and contractors. In connection with Privacy Act inquiries, Servicer has provided updated and corrected information as appropriate about borrowers' records to ensure that any system of record maintained by Fannie Mae on behalf of the Treasury is accurate and complete.

9.     Servicer acknowledges that Fannie Mae is required to develop and implement customer service call centers to respond to borrowers' and other parties' inquiries regarding the Programs in which Servicer participates, which may require additional support from Servicer. Servicer has provided such additional customer service call support as Fannie Mae has reasonably requested to support such Programs.

10.    Servicer acknowledges that Fannie Mae and/or Freddie Mac are required to develop and implement practices to monitor and detect loan modification fraud and to monitor compliance with applicable consumer protection and fair lending laws. Servicer has fully and promptly cooperated with Fannie Mae's inquiries about loan modification fraud and legal compliance and has complied with any anti-fraud and legal compliance procedures which Fannie Mae and/or Freddie Mac have required. Servicer has developed and implemented an internal control program to monitor and detect loan modification fraud and to monitor compliance with applicable consumer protection and fair lending laws, among other things, as provided in Section 4 of the Financial Instrument.

11.    Solely if Servicer has elected to participate in the Second Lien Modification Program by executing and delivering to Fannie Mae a Service Schedule relating thereto, Servicer acknowledges that each mortgage loan it modified under the Second Lien Modification Program was, at the time of modification, second in priority relative to the first lien that was modified under the Programs.

In the event that any of the certifications made herein are discovered not to be true and correct, Servicer agrees to notify Fannie Mae and Freddie Mac immediately.

Wells Fargo Bank, N.A.:

_____        _____
[Name of Authorized Official]                          Date
[Title of Authorized Official]

Certified Document Number: 79265486 - Page 31 of 41

**EXHIBIT D**

**FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT**

# ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment and Assumption Agreement") is entered into as of [INSERT DATE] by and between [INSERT FULL LEGAL NAME OF ASSIGNOR] ("Assignor") and [INSERT FULL LEGAL NAME OF ASSIGNEE] ("Assignee"). All terms used, but not defined, herein shall have the meanings ascribed to them in the Underlying Agreement (defined below).

WHEREAS, Assignor and Federal National Mortgage Association, a federally chartered corporation, as financial agent of the United States ("Fannie Mae"), are parties to an Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement, a complete copy of which (including all exhibits, amendments and modifications thereto) is attached hereto and incorporated herein by this reference (the "Underlying Agreement");

WHEREAS, Assignor has agreed to assign to Assignee all of its rights and obligations under the Underlying Agreement with respect to the Eligible Loans that are identified on the schedule attached hereto as Schedule 1 (collectively, the "Assigned Rights and Obligations"); and

WHEREAS, Assignee has agreed to assume the Assigned Rights and Obligations.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Assignment. Assignor hereby assigns to Assignee all of Assignor's rights and obligations under the Underlying Agreement with respect to the Assigned Rights and Obligations.

2. Assumption. Assignee hereby accepts the foregoing assignment and assumes all of the rights and obligations of Assignor under the Underlying Agreement with respect to the Assigned Rights and Obligations.

3. Effective Date. The date on which the assignment and assumption of rights and obligations under the Underlying Agreement is effective is [INSERT EFFECTIVE DATE OF ASSIGNMENT/ASSUMPTION].

4. Successors. All future transfers and assignments of the Assigned Rights and Obligations transferred and assigned hereby are subject to the transfer and assignment provisions of the Underlying Agreement. This Assignment and Assumption Agreement shall inure to the benefit of, and be binding upon, the permitted successors and assigns of the parties hereto.

5. Counterparts. This Assignment and Assumption Agreement may be executed in counterparts, each of which shall be an original, but all of which together constitute one and the same instrument.

D-1

IN WITNESS WHEREOF, Assignor and Assignee, by their duly authorized officials, hereby execute and deliver this Assignment and Assumption Agreement, together with Schedule 1, effective as of the date set forth in Section 3 above.

**ASSIGNOR:** [INSERT FULL LEGAL NAME OF ASSIGNOR]

By:_____
Name:_____
Title:_____
Date:_____

**ASSIGNEE:** [INSERT FULL LEGAL NAME OF ASSIGNEE]

By:_____
Name:_____
Title:_____
Date:_____

Certified Document Number: 7926S486 - Page 35 of 41

# SCHEDULE 1

## To

## ASSIGNMENT AND ASSUMPTION AGREEMENT

## EXHIBIT E

## FORM OF COVER SHEET

<u>**Cover Sheet for Transmission of Amended and Restated Commitment to Purchase Financial
Instrument and Servicer Participation Agreement and Related Documents**</u>

<u>**To:**</u> [INSERT FULL LEGAL NAME OF SERVICER] ("<u>Servicer</u>"), [INSERT SERVICER CONTACT]

<u>**From:**</u> Federal National Mortgage Association, a federally chartered corporation, as financial agent of the
United States ("<u>Fannie Mae</u>")

<u>**Copy To:**</u> The U.S. Department of the Treasury, [INSERT TREASURY CONTACT]

<u>**Date:**</u> [INSERT DATE OF TRANSMISSION]

<u>**Method of Transmission:**</u> [Facsimile to [INSERT FAX NUMBER OF SERVICER]] [[Email with PDF file
attached to [INSERT SERVICER EMAIL ADDRESS][Specify other method of electronic delivery]]

<u>**NOTICE**</u>

[IF THIS TRANSMISSION OCCURS UPON EXECUTION OF COMMITMENT:]This transmission
constitutes notice to Servicer that the Amended and Restated Commitment to Purchase Financial Instrument
and Servicer Participation Agreement, by and between Fannie Mae and Servicer (the "<u>Commitment</u>") and the
Service Schedule(s) and Financial Instrument attached thereto have been fully executed and are effective as of
the date of this transmission. The date of this transmission shall be the "<u>Effective Date</u>" of the Commitment,
the Service Schedule(s) and the Financial Instrument.

[IF THIS TRANSMISSION OCCURS IN CONNECTION WITH DELIVERY OF ADDITIONAL SERVICE
SCHEDULES:] This transmission constitutes notice to Servicer that Additional Service Schedule(s) and a
Certification have been delivered by Servicer to Fannie Mae, pursuant to Section 4 of the Amended and
Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement, by and
between Fannie Mae and Servicer (the "<u>Commitment</u>"). The Additional Service Schedule(s) and the
Certification attached hereto have been fully executed and are effective as of the date set forth in the
Additional Service Schedule(s).

Copies of the fully executed Additional Service Schedule(s) and the Certification are attached to this
transmission for your records.

Certified Document Number: 79265486 - Page 37 of 41

# AMENDMENT
## to
## AMENDED AND RESTATED COMMITMENT TO PURCHASE
## FINANCIAL INSTRUMENT
## and
## SERVICER PARTICIPATION AGREEMENT

This Amendment to Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement (this "Amendment") is entered into and effective as of April 1, 2015, by and between Federal National Mortgage Association, a federally chartered corporation, as financial agent of the United States ("Program Administrator") and the undersigned party ("Servicer").

### Recitals

WHEREAS, the U.S. Department of the Treasury (the "Treasury") has established a Making Home Affordable Program ("MHA") pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (the "Act"), as section 109 of the Act has been amended by section 7002 of the American Recovery and Reinvestment Act of 2009;

WHEREAS, Treasury has established a variety of programs (the "Programs") under MHA, including, but not limited to, the Home Affordable Modification Program ("HAMP"), to stabilize the housing market by facilitating loan modifications and making other foreclosure prevention services available to the marketplace;

WHEREAS, Fannie Mae and Freddie Mac (collectively, the "GSEs") have required their servicers to modify eligible loans owned, securitized or guaranteed by each GSE ("GSE Loans") in accordance with GSE HAMP requirements ("GSE Services");

WHEREAS, Servicer elected to participate in the Programs with respect to loans not owned, securitized or guaranteed by the GSEs and accordingly entered into an Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement with the Program Administrator (the "Commitment"; and together with all documents incorporated therein by reference, and all amendments and modifications thereto, the "Agreement") under which Servicer performs certain Services as that term is defined in the Agreement;

WHEREAS, pursuant to the Agreement, Servicer executed and delivered Service Schedule A-1, under which Servicer elected to participate in HAMP; and

WHEREAS, the Program Administrator and Servicer desire to amend the Commitment in order to provide for Services under Service Schedule A-1 with respect to certain GSE Loans, as more particularly described below.

Accordingly, in consideration of the representations, warranties, and mutual agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Program Administrator and Servicer agree as follows:

1

Certified Document Number: 79265486 - Page 38 of 41

**Agreement**

## 1. Definitions

A. Capitalized terms used but not defined herein, including, but not limited to, as defined in the Recitals to this Amendment, shall have the meanings ascribed to them in the Agreement.

## 2. Amendments

A. The Ninth Recital in the Commitment is hereby deleted in its entirety and replaced with the following:

WHEREAS, Fannie Mae and Freddie Mac approved servicers are being authorized through their respective servicing guides, announcements and bulletins, instructions and requirements (collectively, and as amended from time to time, the "GSE Servicing Guides") to perform certain Services (authorized by the GSEs) hereunder with respect to mortgage loans owned, securitized, or guaranteed by Fannie Mae or Freddie Mac (the "GSE Loans"); and, accordingly, this Agreement does not apply to any other GSE Services provided to the GSEs under their respective GSE Servicing Guides;

B. The introductory clause to Section 1.B. is amended to read as follows: "Subject to Sections 2.D. and 10.C.,".

C. Section 2.B. is amended to add the following as the final sentence in such Section:

"Servicer shall not have the foregoing obligations with respect to the GSEs and GSE Loans."

D. Section 2.D. of the Commitment is hereby deleted in its entirety and replaced with the following:

D. Fannie Mae and Freddie Mac each has authorized Servicer through the GSE Servicing Guides to perform certain Services with respect to GSE Loans under this Agreement and Service Schedule A-1 ("GSE SPA Services"). This Agreement does not apply to any GSE Services provided to the GSEs under their respective GSE Servicing Guides that do not also constitute GSE SPA Services.

E. The following is added to the Commitment as Section 12.E:

E. Other than the Recitals and Section 2.D. above, all references to "Freddie Mac" in the Commitment, the Financial Instrument and the Certifications shall be deemed to refer to either (1) Freddie Mac, in its capacity as financial agent of the United States and compliance agent of the Programs or, (2) if Freddie Mac does

2

Certified Document Number: 79265486 - Page 39 of 41

not act as compliance agent with respect to Services performed on GSE Loans, such other third party as Treasury may designate to act as compliance agent with respect to Services performed on GSE Loans. Other than the Recitals and Section 2.D. above, all references to "Fannie Mae" in the Commitment, the Financial Instrument and the Certifications shall be deemed to refer to Fannie Mae, in its capacity as financial agent of the United States and Program Administrator of the Programs.

## 3. Representations and Warranties

A.     Servicer represents and warrants to the Program Administrator, Freddie Mac and Treasury, as of the date hereof, that Servicer has the full corporate power and authority to enter into, execute, and deliver this Amendment.

## 4. Miscellaneous

A.     The Recitals set forth at the beginning of this Amendment are true and accurate and are incorporated herein by this reference.

B.     All references to the "Commitment" and the "Agreement" (or words of similar effect) in the Commitment, the Agreement, any document issued or delivered thereunder, and any amendment or modification thereto (including, without limitation, the Service Schedules, Financial Instrument, Assignment and Assumption Agreement(s), Certifications and Program Documentation) (collectively, the "Related Documents"), shall mean the Commitment and the Agreement, each as amended hereby.

C.     Except as expressly set forth herein, all of the terms and provisions of the Agreement and the Related Documents are and shall remain in full force and effect.

D.     Any provision of this Amendment that is determined to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Amendment, and no such prohibition or unenforceability in any jurisdiction shall invalidate such provision in any other jurisdiction.

E.     This Amendment may be executed in two or more counterparts (and by different parties on separate counterparts), each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.     Facsimile or electronic copies of this Amendment shall be treated as originals for all purposes.

[SIGNATURE PAGE FOLLOWS; REMAINDER OF PAGE
INTENTIONALLY LEFT BLANK]

Certified Document Number: 79265486 - Page 40 of 41

3

In Witness Whereof, Servicer and Program Administrator by their duly authorized officials hereby execute and deliver this Amendment as of the date first written above.

Wells Fargo Bank, N.A.

By: ▮▮▮▮▮▮▮▮▮▮▮▮

Name: Michael J. Heid

Title: Executive Vice President

Date: 3-3-15

FANNIE MAE, solely as Financial Agent of the United States

By: ▮▮▮▮▮▮▮▮▮▮▮▮

Name: Lori A. Mallon

Title: VP, MHA ? Foreclosure Prevention

Date: 3|11|15

Certified Document Number: 79265486 - Page 41 of 41

4



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265486 Total Pages:  41

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



Consumer Credit Group
Collections Servicing
P.O. Box 4116
MAC P6053-022
Portland, OR 97208-4116

April 1, 2008

KIRK L KERN
JACQUELINE M KERN
16219 CHAMPION DR
SPRING, TX 77379-6710

RE: Account Number: 65065086315650001

Dear KIRK L KERN & JACQUELINE M KERN:

The Work Out process includes a review of your current financial status. In order to determine
the best options for your situation, we need you to provide us with the financial information
listed on the enclosed checklist.

Your Wells Fargo Bank, N.A. Loan Agreement is a contractual agreement in which you promise
to repay funds loaned.

You are required to maintain a current status on your loan during this process. If your account is
currently set up with automatic payments, these payments will continue to be debited from the
designated checking account. Delinquencies will be reported to the credit bureaus as normal.

Please forward the requested items to: Wells Fargo Bank, CCG Collections Servicing, Work Out
Unit – MAC# P6053-022, 18700N.W. Walker Rd. #92, Beaverton, Or (overnight mail) by
04/16/2008 to expedite processing. If you have questions, please call us at 1-866-587-3534
Monday through Friday 8:00 a.m. to 5:00 p.m. PT. For TDD Assistance, call 1-800-353-5565.

We will complete the Work Out process for you as soon as possible, following our receipt of all
of the information requested. Please note, processing times may vary. You can call me at the
number above if you have any questions about the status of your Work Out.

Sincerely,

Megan Baker
CCG Collections Servicing
866-587-3534 *1902

Enclosure

The laws of some states require us to inform you that this communication is an attempt to collect a debt and that information
obtained will be used for that purpose.

EQ-WO-008



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:       79265487 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

## FAX COVER SHEET

TO:             Jennifer Medifie – Fax Number – 1-866-593-3578

FROM:           Kirk L. Kern

REFERENCE:      Loan Number # 65086315650001

Number of Pages including Cover    12

Jennifer,

Please forgive my spelling of your last name. I only jotted it down by sound. Hopefully it is close.

Here is the information requested, along with some supporting information.

Please confirm via e-mail that you received this facsimile. My e-mail address is kirkkern@aol.com. I will follow up on Friday, March 20, 2009 to see what progress has been done. You may also feel free to contact me at 832-563-1310.

I sincerely appreciate your attention to this matter and look forward to some resolution.

Kirk L. Kern

Documents included in this fax:

Letter of Events
Copy of the 2008, 1040 Income Tax Return
Copy of my schedule A – Itemized Deductions for 2008
Individual Cash Income versus Expense Statement January and February 09
Individual Cash Income versus Expense Statement 2008
Letter to Jeanine 11-19-08 - Check Stub
Letter to Jeanine 11-7-08 – Income vs Expense
Letter to Jeanine 10-14-08 – Hardship Letter
Letter to Research Department 12-19-06 – Missing payment

Wells Fargo Bank, NA                                              3-18-2009
P.O. Box 5169
Sioux Falls, SD 57117-5169

Reference : Loan Number 65086315650001

Dear Jennifer,

Per our conversation, I am forwarding my cash income versus Expense statement for
2008 and January and February 2009. Along with these documents I am sending a copy
of my 2008 Federal Tax Return.

I also have sent copies of my Hardship Letter which was sent 10-14-08, a copy of my last
letter with income versus expenses date 11-07-2008 and a fax cover sheet on a
supposedly missed payment which has never been verified or rectified from 12-19-2006.

It is my desire to straighten out this account and move forward in these very difficult
times. So you have a clear picture of what has been transpiring between myself and
Wells Fargo, I am supplying this brief outline of what actions or supposed actions have
taken place.

1. November 3, 2006 a payment was taken from my checking account and not
   applied to my account. This action began a chain reaction of late charges dating
   back 2 years. For this reason your accounting was showing my account to be
   running in the rears approximately 45 days every month.

2. I started working with the solutions department as far back as January 2007 to
   straighten out the problem with no success. On several occasions I was contacted
   by your department to make corrective actions. On all three attempts they said
   "I'm sorry, you are in Texas. Texas has different laws and we cannot help." Both
   attempts where going to remove the late fee's on the account and the payment in
   question being moved to the end of the loan agreement.

3. In early 2008 I was contacted by Jeanine Long @ extension 49350. She also
   wanted to help remedy the situation and said things had changed and Wells Fargo
   could now help. I Sent numerous documents to her including copies of pay stubs,
   income versus expenses, hardship letters and several other documents which she
   said that Wells Fargo could reduce my monthly amount and gradually increase as
   times improved, as well as taking care of the mountainous late fees. After all
   attempts she could not or has not done anything. It was always that underwriting
   wants one more thing!

   A point of fact which also has troubled me, was that since I was working with
   your department I have been pushed away from three months of deferred
   payments due to Hurricane Ike. I was told after the Hurricane that Wells Fargo
   was going to help us in our very unfortunate time. When it came down to

Certified Document Number: 79265488 - Page 2 of 3

modifying the deferment it was said " I am sorry, since you are working with our solutions department they must handle it" Nothing has happened in regards to the deferment as well! During that time Jeanine indicated that she was working on getting my monthly payment reduced by 50% and it would gradually go up. So please go ahead and start making that payment. (Which I have been making since October.)

4. My last conversation with Jeanine was approximately 3 weeks ago. (I called her and have called her regularly to find out what is going on) She said that if I can send her my 2008 tax return that should complete the process. I told her that I would get the information together and send it to her. I called her March 17, 2009 and left a message on her voice mail that it would go out this week. Today March 18, 2009 I received a call from Wells Fargo Collections stating she had sent it back to them due to no response from me. I find that statement ridiculous since I have been the one pursuing Wells Fargo for an answer.
5. I find myself again pursuing a remedy to the problem and hope that at your level of supervision it may lend an end to my plight.

Please feel free to contact me regarding any information or to verify any circumstance which has occurred to bring closure to the situation.

Sincerely,

Kirk L. Kern



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:          79265488 Total Pages:  3

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

# Working through the home equity payment assistance process with your Wells Fargo home preservation specialist



**Now that you've been assigned a Wells Fargo home preservation specialist,** we'd like to help you understand what to expect as you work through the home equity assistance process. Your home preservation specialist is your one point of contact, dedicated to helping you through every step of the process. Working together, your specialist will help you understand the options available to you, and do everything possible to help you avoid the foreclosure sale of your home.

**Keep in mind that this one-on-one relationship also requires two-way communication.** You are an important part of the process. So be sure you promptly respond to your home preservation specialist's calls, communications, and requests for information and documentation. Your availability and timely actions are key to moving the process forward. Hold onto this flyer so you'll have the following information as a helpful reference.

### What you can expect
Your home preservation specialist will:
- Serve as your one point of contact — dedicated to personally helping you through the entire home equity assistance process.
- Be the person you can rely on every step of the way — someone who knows you and your situation.
- Help you understand the home equity assistance process and the options that may be available to you.
- Answer your questions and address your concerns.
- Help set expectations for you along the way.
- Understand what you need, and get what's needed from you to keep things on track.
- Keep you posted about what's going on, and move you through the process as quickly as possible.
- Do all that is possible to prevent the foreclosure sale of your home. And if the foreclosure process is already underway, you'll have someone to work through it with you, in addition to the third-party foreclosure attorney working with you.

### How you'll benefit
Working closely with your home preservation specialist, you will:
- Have one person dedicated to helping you throughout the home equity assistance process.
- Always have a "go to" person you can call with questions or concerns along the way — someone who's familiar with you and your situation.
- Understand the home equity assistance options that may be available to you — from options that may help you keep your home, to voluntary options that may help you avoid a foreclosure sale and ease your transition to a new place to live.
- Be kept well-informed, in a timely, easy-to-understand manner — by phone or in writing. You'll know what to expect, next steps, due dates, decisions and updates, and where to escalate any issues.
- Receive ongoing, step-by-step communications from your home preservation specialist, including:
  - Requests for documents and information needed or missing with specific due dates
  - Acknowledgment of documents received from you
  - Decisions that are reached about eligibility/approvals/denials, and next steps
  - Any changes in the process or key dates
  - Finalized documents
  - Key information about the foreclosure process, potential sale date set or changed

### How you can help us help you
As explained above, your home preservation specialist will be here for you and help you all the way through the home equity assistance process. It's equally important for you to be available to your home preservation specialist, because you have an important role in the process, too. There are many points along the way that your home preservation specialist will need to reach you, hear from you, or receive documents/information from you. Please be sure to promptly respond to and comply with all requests and due dates, as timing and taking action are extremely important in moving the process forward.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property.

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801. 1 HE SPOC IntroV1-2combinedLtr 6/11

Certified Document Number: 79265489 - Page 1 of 1





I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265489 Total Pages:   1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Wells Fargo Services
MAC #N9777-113HEQ
PO Box 5169
Sioux Falls, SD 57117-5169



07/12/11




KIRK L KERN
JACQUELINE M KERN
16219 CHAMPION DR
SPRING, TX 77379-6710

RE: IMPORTANT NEWS: You may be eligible for **PAYMENT RELIEF** on your
Wells Fargo Home Equity Account number ending in 1565

Dear Kirk L Kern & Jacqueline M Kern:

**At Wells Fargo, our customers are very important to us. We value our relationship with you,** and want to
let you know that you may be eligible for PAYMENT RELIEF on your home equity account.

**You may be considered for a loan modification** - a change to the original terms of your home equity account
agreement. If you qualify, this may give you:
  ∘ a lower interest rate
  ∘ a lower monthly payment amount
  ∘ an extension of the time you have to repay your loan
  ∘ or a combination of the above

**You must call 1-866-587-4012 by 07/22/11** to help us determine if you qualify. When you call, **please
mention this letter about payment relief** - and ask us about a loan modification for your home equity account.
We'll also need to know your current financial information, including income and expenses.

**Here's how it works.** We'll review your financial information and, if applicable, suspend any collection activities
for 30 days while we create a new plan for you. After you make three consecutive payments in the new amount,
we can finalize your loan modification.

**But we can't help you if you don't call us.** Don't wait - please call NOW so we can determine whether we can
suspend the collections process, and give you the assistance you need.

**For the help you need, call 1-866-587-4012 today.** Our Home Equity Specialists are waiting to help you
Monday - Friday, 8:00AM - 7PM CT, Saturday, 8am - 7pm CT. We may also be able to refer you to an approved
agency for budget counseling at no cost to you.

Sincerely,

*Jeff Smith*

Jeff Smith
Senior Vice President
Wells Fargo Bank, N.A.

Certified Document Number: 79265490 - Page 1 of 1

The laws of some states require us to inform you that this is an attempt to collect a debt, and any information
obtained will be used for that purpose.

©2008 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. Equal Housing Lender.     HEAPL 0708



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265490 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**





MAKING HOME AFFORDABLE

You may be able to make your payments more affordable.
**Act now to get the help you need. Call 1-866-587-4012 today.**

July 21, 2011

KIRK L KERN
16219 CHAMPION DR
SPRING TX 77379-6710

Re: Your home equity account number 650-650-8631565-XXXX

Dear KIRK L KERN,

**Help may be available** if you're having difficulty making your mortgage loan payments. You may be eligible for the Home Affordable Modification Program for your first lien mortgage account.

**As your mortgage loan servicer, we'll work with you** in an effort to make your home equity payment affordable. You will not pay any fees to take advantage of this opportunity to modify your payment and keep your home. Now is the time to act. We're ready to help you.

**Here's how it works:** We will first determine if you are eligible, based on your financial situation. If you are eligible, we'll look at your monthly income and housing costs, including any past due payments, and then determine an affordable payment.

**At first,** you'll make new, affordable monthly payments on your home equity account during a trial period. If you make those payments successfully and fulfill all trial period conditions, we'll permanently modify your account.

**The modification may involve** some or all of the following changes to your mortgage loan:
- Bringing your account current;
- Reducing the interest rate on your loan;
- Extending the term of the loan, and/or
- Delaying your repayment of part of your principal until the end of your loan term

**Gather the information we need to help you.**
To take advantage of this opportunity and the Home Affordable Modification Program, contact us as soon as possible. To help speed the process, it will be helpful if you have the following information when you call:
- Loan number
- Monthly pre-tax income of each borrower
- Information about any financial hardship you are suffering

If you don't qualify for a loan modification under this program, or don't want to stay in your home, we'll work with you to explore other options available to help you keep your home, or ease your financial situation.

**Contact us now at 1-866-587-4012.**
We want to make modifying your home equity account as easy as possible. However, you must take the first step by contacting us at 1-866-587-4012, Monday-Thursday 7am-11pm, Friday 7am-8pm, Saturday 7am-5pm, and Sunday 8am-10pm, Arizona Time.

Home Preservation Team

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC

HE-HAMP-SOL WEST 5/10





I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265491 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



08/08/11

KIRK L KERN
16219 CHAMPION DR
SPRING, TX  77379-6710

Subject:  Introducing a specialist dedicated to helping you with your Wells Fargo home equity relationship

Dear Kirk L Kern:

Now that you've been assigned a Wells Fargo home preservation specialist to work with you, I'm writing to formally introduce myself.

I'm Randy Helgeson a home preservation specialist with Wells Fargo Home Equity. In this role, I am dedicated to helping you with your request for home equity assistance.  I will be your primary contact, and you can count on me to assist you personally through every step of the process.  I can be reached at (866) 319-0855 Ext: 80566.

**How I'll be assisting you:**  Working closely with you, I'll explore all available options to find one that might be right for your situation.  I will keep you well-informed and do all I can to move you through the process as quickly as possible.

**Along the way, please respond promptly** to any communications and requests for information you receive. And keep in mind, if you do not provide information in a timely manner, it could impact your eligibility for home equity assistance.  If you have any questions at any time, I'm here to help you, so don't hesitate to reach out to me.

**Please read the enclosed flyer** for more details on how we'll be working together. I'm committed to helping you through the process and making it the best experience possible.  That's why I welcome your feedback at any point - whether it's to share something positive, or if you have concerns with something that I was not able to help you with. Just let me know, and I'll be happy to put you in touch with my manager.

**I'm here to help you.**  I look forward to working with you and encourage you to contact me with any questions you may have.  You can reach me at (866) 319-0855 Ext: 80566 during these hours:
Tuesday-Saturday 6:00 a.m.-3:00 p.m. Pacific Time

Sincerely,

Randy Helgeson
Home Preservation Specialist
Wells Fargo Home Equity
(866) 319-0855 Ext: 80566
Fax: (866) 834-7850

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property.

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801. 1 HE SPOC IntroV1-2combinedLtr 6/11





I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265492 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



Wells Fargo Bank N.A
Home Equity Group
MAC P6050-01
18700 NW Walker Rd #92
Beaverton, OR 97006



September 15, 2011

KIRK L KERN
JACQUELINE M KERN
16219 CHAMPION DR
SPRING, TX 77379

Subject: Information needed for payment assistance consideration on account number: 650-650-8631565-XXXX

Dear KIRK L KERN and JACQUELINE M KERN:

Thank you for contacting us about your account. We're committed to trying to help you stay in your home, and we want to help you overcome your home equity payment problems and get back on track. To help us determine the best payment option for your needs, we need to review some information about your current financial situation. We have attached a list of documents we need from you -- please send this information by September 22, 2011 so we can move forward quickly with your request. Just follow the steps below:

## STEP 1: GATHER THE INFO WE NEED TO HELP YOU

o   On the enclosed Fax Cover Sheet, we've provided a list of documents you need to send us.

o   Please make sure the financial information you provide is complete and accurate. This helps ensure a faster review process.

o   Keep a copy of all documents for your records. Do not send original income documentation; copies are acceptable.

o   All documents are reviewed for the purpose of making a modification decision on the above referenced account(s) with Wells Fargo Home Equity. We'll complete the review as quickly as possible; however, please note processing times vary, and we may contact you for additional information if necessary.

## STEP 2: COMPLETE AND SUBMIT

o   To expedite processing, fax these documents to 1-866-834-7850 by September 22, 2011 or use the postage paid envelope enclosed with this letter. If you have questions, please call 1-866-319-0855 ext. 80566, Tuesday-Saturday 6:00 a.m.-3:00 p.m. Pacific Time.

If your first mortgage is with Wells Fargo Home Mortgage and you are currently working with them on payment assistance, you can continue to work with your assigned representative. If you have not begun the process of working with Wells Fargo Home Mortgage but want to request assistance, you can call them at 1-877-216-8448.

Please remember that your Wells Fargo Bank, N.A., Agreement is a contractual agreement in which you promise to repay the amount loaned. If your account is currently set up with automatic payments, these payments will continue to be deducted from your designated checking account. Also note that your account will continue to report to the credit bureaus.

Thank you. We appreciate your business and your immediate response to this letter. If you have questions about the review status, please call me directly at number below

Sincerely,
Randy Helgeson ext. 80566
Home Preservation Specialist
1-866-319-0855



To comply with government regulations and the terms of the modification, you must send the required documentation to Wells Fargo within 30 days of the document request. Once all documents are received and all requirements are satisfied, you will be notified within 30 days whether your modification has been conditionally approved. After successfully completing your trial payment period (if one is required), Wells Fargo will send final modification documents to you within 5 days of final approval. You must sign and return your modification documents to Wells Fargo within 30 days. If you have any questions about this account or about the modification process, please call your Home Preservation Specialist. Modifications are not available in some states due to local state regulations. The laws of some states require us to inform you that this is an attempt to collect a debt and any information obtained will be used for that purpose. ©2011 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801 HE-HPS 1  7/11



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265493 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



09/19/11

 KIRK L KERN
16219 CHAMPION DR
SPRING, TX 77379-6710

Subject:    A new specialist dedicated to helping you with your Wells Fargo Home Equity relationship

Dear Kirk L Kern:

I'd like to take this opportunity to introduce myself. My name is Kamaria Taylor, and I'm writing to let you know that going forward, I will be your new Wells Fargo home preservation specialist.

Previously, another specialist was assisting you, but now I'll serve as your dedicated home preservation specialist. In this role, I will be your primary contact, working closely with you and helping you through every step of the home equity assistance process. Remember that along the way; please respond promptly to any communications and requests for information you receive. To help expedite the process, please fax your documents and information to (866) 834-7850. If you prefer to send the documents by mail, please send them to:

Home Preservation Team
Mac X2303-01N
1 Home Campus
Des Moines, IA 50328

**I'm committed to helping you through the process** and making it the best experience possible. That's why I welcome your feedback at any point - whether it's to share something positive, or if you have concerns with something about which I was not able to help you. Just let me know, and I'll be happy to put you in touch with my manager.

**You can count on me to keep you well-informed** about your account, the process, and next steps. I'm here to help you in any way I can. Please feel free to contact me with any questions you may have along the way. You can reach me at (866) 319-0855 Ext: 80439 during these hours: Tuesday-Saturday 6:00 a.m.-3:00 p.m. Pacific Time.

**I'm pleased to have this opportunity to help you,** and look forward to working with you.

Sincerely,

Kamaria Taylor
Home Preservation Specialist
Wells Fargo Home Equity
(866) 319-0855 Ext: 80439
Fax: (866) 834-7850
Kamaria.J.Taylor@wellsfargo.com

Please note: sending your documents via email is not a secure transmission method. If you are concerned about secure transmission, please send documents to us by regular mail or by fax to the number listed in this letter.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property.

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801. 2 HE SPOC TransferLtr 9/11

Certified Document Number: 79265494 - Page 1 of 1





I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265494 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com



October 18, 2011

Kirk L Kern
Jacqueline M Kern
16219 Champion Dr
Spring, TX 77379-6710

Subject: Your Wells Fargo home equity account ending in 15650001

Dear Kirk L Kern and Jacqueline M Kern:

Thank you for working with me toward a modification that could make your home equity payments more affordable. I haven't yet received all the documents that are needed from you. Your information is critical to moving forward with your home equity payment solution.

**Please fax me your documents within 48 hours.** Enclosed is a Fax Cover Sheet for your use. When you fax, please be sure your name and account number are on each page you send.

**Please call me today** to let me know when to expect your documents: 1-866-319-0855 ext. 80439, Monday-Friday 8:00 a.m.-5:00 p.m. Pacific Time.

Because we've been working together, I want to help you stay with this program. If you're having any difficulty providing some of the information, please call me now, because I may be able to suggest a solution. I appreciate your taking the time to work with us, and I look forward to receiving your documents soon.

Sincerely,
Kamaria Taylor
Home Preservation Specialist
Wells Fargo Home Equity
Phone: 1-866-319-0855 ext. 80439
Fax: 1-866-834-7850

To comply with government regulations and the terms of the modification, you must send the required documentation to Wells Fargo within 30 days of the document request. Once all documents are received and all requirements are satisfied, you will be notified within 30 days whether your modification has been conditionally approved. After successfully completing your trial payment period (if one is required), Wells Fargo will send final modification documents to you within 5 days of final approval. You must sign and return your modification documents to Wells Fargo within 30 days. If you have any questions about this account or about the modification process, please call your Home Preservation Specialist. Modifications are not available in some states due to local state regulations. The laws of some states require us to inform you that this is an attempt to collect a debt and any information obtained will be used for that purpose.
©2011 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801. HE-HPS 4  7/11



Certified Document Number: 79265495 · Page 1 of 1

PCTLML 19 00038



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265495 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Wells Fargo Bank, N.A.
MAC P6053-022
P.O. Box 4116
Portland, OR 97208-4116

# 2018-21484 / Court: 295



11/08/11

 KIRK L KERN
JACQUELINE M KERN
16219 CHAMPION DR
SPRING, TX 77379-6710



**Call 1-866-970-7834 today -**
You may be eligible for **PAYMENT RELIEF**
on your Wells Fargo Home Equity
Account # 1565

Dear Kirk L Kern & Jacqueline M Kern:

Your home equity account is seriously past due. You must call us now to discuss your options.
Because we value our relationship with you, we want to speak with you about possible PAYMENT RELIEF for
your home equity account.

**If you contact us now, you may still be considered for a loan modification** - a change to the original
terms of your home equity account agreement. If you qualify, this may give you:
- a lower interest rate
- a lower monthly payment amount
- an extension of the time you have to repay your loan
- or a combination of the above

**You must call 1-866-970-7834 now** to help us determine if you qualify. When you call, **please mention
this letter about payment relief** - and ask us about an account modification. We'll also need to know your
current financial information, including income and expenses.

**Even if you were previously unable to qualify for a modification, we may have other options available - so
please call us now.**

**We want to work with you, but we can't help if you don't call. Please call 1-866-970-7834 today.**
Our Home Equity Specialists are waiting to help you Monday-Thursday 6AM-8PM, Friday 6AM -5PM, Saturday
6AM-3PM, and Sunday 11AM-8PM Pacific Time. We may also be able to refer you to an approved agency for
budget counseling at no cost to you.

Sincerely,

*Christine Rosencrance*

Christine Rosencrance
Wells Fargo Bank, N.A.



HEQCM-H1

The laws of some states require us to inform you that this is an attempt to collect a debt, and any information obtained
will be used for that purpose.
© 2010 Wells Fargo Bank, N.A. All rights reserved, Member FDIC. Equal Housing Lender. HEA BKT6 10/10



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265496 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



12/31/12

 KIRK L KERN
16219 CHAMPION DR
SPRING, TX 77379-6710

Subject:    A new specialist dedicated to helping you with your Wells Fargo Home Equity relationship

Dear Kirk L Kern:

I'd like to take this opportunity to introduce myself. My name is Maria Del Pilar Valverde, and I'm writing to let you know that going forward, I will be your new Wells Fargo home preservation specialist.

Previously, another specialist was assisting you, but now I'll serve as your dedicated home preservation specialist. In this role, I will be your primary contact, working closely with you and helping you through every step of the home equity assistance process. Remember that along the way; please respond promptly to any communications and requests for information you receive. To help expedite the process, please fax your documents and information to (866) 834-7850. If you prefer to send the documents by mail, please send them to:

Home Preservation Team
Mac X2303-01N
1 Home Campus
Des Moines, IA 50328

**I'm committed to helping you through the process** and making it the best experience possible. That's why I welcome your feedback at any point – whether it's to share something positive, or if you have concerns with something about which I was not able to help you. Just let me know, and I'll be happy to put you in touch with my manager.

**You can count on me to keep you well-informed** about your account, the process, and next steps. I'm here to help you in any way I can. Please feel free to contact me with any questions you may have along the way. You can reach me at (877) 398-4088 Ext: 80415 during these hours: Tuesday-Saturday 6:00 a.m.-3:00 p.m. Pacific Time.

**I'm pleased to have this opportunity to help you,** and look forward to working with you.

Sincerely,

Maria Del Pilar Valverde
Home Preservation Specialist
Wells Fargo Home Equity
(877) 398-4088 Ext: 80415
Fax: (866) 834-7850
mariadelpilar.valverde@wellsfargo.com

Please note: sending your documents via email is not a secure transmission method. If you are concerned about secure transmission, please send documents to us by regular mail or by fax to the number listed in this letter.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property.

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801. 2 HE SPOC TransferLtr 9/11

Certified Document Number: 79265497 - Page 1 of 1





I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265497 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



08/05/13

KIRK L KERN
16219 CHAMPION DR
SPRING, TX 77379-6710

Subject:     A new specialist dedicated to helping you with your Wells Fargo Home Equity relationship

Dear Kirk L Kern:

I'd like to take this opportunity to introduce myself. My name is Jing Freitag, and I'm writing to
let you know that going forward, I will be your new Wells Fargo home preservation specialist.

Previously, another specialist was assisting you, but now I'll serve as your dedicated home preservation
specialist. In this role, I will be your primary contact, working closely with you and helping you through
every step of the home equity assistance process. Remember that along the way; please respond promptly to
any communications and requests for information you receive. To help expedite the process, please fax your
documents and information to (866) 834-7850. If you prefer to send the documents by mail, please send them to:

Home Preservation Team
Mac X2303-01N
1 Home Campus
Des Moines, IA 50328

**I'm committed to helping you through the process** and making it the best experience possible. That's
why I welcome your feedback at any point - whether it's to share something positive, or if you have concerns
with something about which I was not able to help you. Just let me know, and I'll be happy to put you in touch
with my manager.

**You can count on me to keep you well-informed** about your account, the process, and next steps. I'm
here to help you in any way I can. Please feel free to contact me with any questions you may have along the
way. You can reach me at (866) 623-1022 Ext: 80550 during these hours:
Monday-Friday 8:00 a.m.-5:00 p.m. Pacific Time.

**I'm pleased to have this opportunity to help you,** and look forward to working with you.

Sincerely,

Jing Freitag
Home Preservation Specialist
Wells Fargo Home Equity
(866) 623-1022 Ext: 80550
Fax: (866) 834-7850
Jing.Freitag@wellsfargo.com

Please note: sending your documents via email is not a secure transmission method. If you are concerned about
secure transmission, please send documents to us by regular mail or by fax to the number listed in this letter.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a
discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a
security interest in the property and will only exercise our rights as against the property.

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801. 2 HE SPOC TransferLtr 9/11





I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265498 Total Pages:  1

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



**HELP FOR AMERICA'S HOMEOWNERS.**


MAKING HOME AFFORDABLE

October 3, 2013

KIRK L KERN                          **Loan #:**     xxxxxxxxx15650001
JACQUELINE M KERN

**Property Address:** 16219 CHAMPION DR SPRING, TX 77379

Dear Borrower(s):

We want to provide you with options to help you prevent foreclosure. If you are looking for help selling your home to avoid foreclosure, the federal government has introduced the **Home Affordable Foreclosure Alternatives** (HAFA) Program to help you. As your mortgage servicer, we are offering you the opportunity to participate in this program by utilizing HAFA's short sale option.

**Home Affordable Foreclosure Alternatives Program – Short Sale**
A "short sale" is specifically designed to help borrowers who are unable to afford their first mortgage and want to sell their home to avoid foreclosure, even if the sale price may not pay off the amount owed on their mortgage. A short sale requires a number of parties (you, the buyer, your real estate broker, and sometimes mortgage insurance companies and other lenders) to work together to make this option successful. However, it could be a good solution for your current situation

How can you find out if you qualify? Just follow the steps below and let us know that you need help, TODAY!

## STEP1  GATHER THE INFO WE NEED TO HELP YOU

Detailed instructions on what you need to do to take advantage of this program are set forth on the enclosed document entitled "Complete Your Checklist". Generally, you will need to:
- Explain the financial hardship that makes it difficult for you to pay your mortgage loan using the Request for Mortgage Assistance (enclosed).
- Submit the required documentation of your income.
- Return the required forms in the specified timeframe.

If you do not qualify for a short sale under HAFA, we will work with you to explore other loss mitigation options, such as a proprietary short sale, or deed-in-lieu of foreclosure.

## STEP2  COMPLETE AND SUBMIT

Please complete the enclosed forms and submit all the required income documentation **no later than 14 calendar days from the date of this letter**. Please fax to 1-866-834-7850 using the fax cover sheet provided for your convenience. Keep a copy of all documents for your records. Now is the time to act. We are ready to help you. Please take the steps outlined on the enclosed document "Complete Your Checklist". If you have any questions about the information in this letter, or have difficulty reaching your single point of contact, please contact Wells Fargo Home Equity at 1-866-970-7821, Monday-Friday, 8am-5pm CST.

Sincerely,

Jing Freitag
Home Preservation Specialist
Wells Fargo Home Equity
1-866-623-1022, Ext: 80550
Fax: 1-866-834-7850

Please note: sending your documents via email is not a secure transmission method. If you are concerned about secure transmission, please send documents to us by fax to the number listed in this letter or regular mail.

*Attachments: Complete Your Checklist, Next Steps, Important Program Info, Frequently Asked Questions, Request for Mortgage Assistance,, IRS Form 4506T/EZ, and Tenant Information*

HAFA-00002-20130926

**Beware of Foreclosure Rescue Scams- Help Is Free!**

There is never a fee to get assistance or information about the Making Home Foreclosure Alternatives Program from your lender or a HUD-approved housing counselor.

For a HUD-approved counselor visit: http://www.hud.gov/offices/hsg/sfh/hcc/hcc

• Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.

• Beware of anyone who says they can save your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.

• Never make your mortgage payments to anyone other than your mortgage company without their approval.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt and, this company has a security interest in the property and will only exercise its right as against the property.

With respect to those loans in the state of California, the state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about credit reports and your rights under federal law, visit the Consumer Financial Bureau's website at: www.consumerfinance.gov/learnmore.

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20006.

HAFA-00002-20130926



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265499 Total Pages:  2

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



Wells Fargo Servicing Center
Home Equity Payment Processing
MAC B6955-01B
PO Box 31557
Billings, MT 59107
Wellsfargo.com

2018-21484 / Court: 295



October 07, 2013

DCHDECDTCQ 004970

իիինիոսիիիիսիիսիիիունիունիունիունիունիունիունիոն

KIRK L KERN
16219 CHAMPION DR
SPRING, TX 77379-6710

Subject:    A new specialist dedicated to helping you with your Wells Fargo Home Equity relationship

Dear KIRK L KERN ;

I'd like to take this opportunity to introduce myself. My name is Nicole Langel, and I'm writing to let you know that going forward, I will be your new Wells Fargo home preservation specialist.

Previously, another specialist was assisting you, but now I'll serve as your dedicated home preservation specialist. In this role, I will be your primary contact, working closely with you and helping you through every step of the home equity assistance process. Remember that along the way; please respond promptly to any communications and requests for information you receive. To help expedite the process, please fax your documents and information to (866) 593-3578 If you prefer to send the documents by mail, please them to:

Home Preservation Team
Mac X2303-01N
1 Home Campus
Des Moines, IA 50328

**I'm committed to helping you through the process** and making it the best experience possible. That's why I welcome your feedback at any point -- whether it's to share something positive, or if you have concerns with something about which I was not able to help you. Just let me know, and I'll be happy to put you in touch with my manager.

**You can count on me to keep you well-informed** about your account, the process, and next steps. I'm here to help you in any way I can. Please feel free to contact me with any questions you may have along the way. You can reach me at (888) 508-8811 Ext: 48890 during these hours: Monday-Thursday 10:00 a.m.-7:00 p.m. and Friday 8:00 a.m.-5:00 p.m. Central Time.

**I'm pleased to have this opportunity to help you,** and look forward to working with you.

Sincerely,
Nicole Langel
Home Preservation Specialist
Wells Fargo Home Equity
(888) 508-8811 Ext: 48890
Fax: (866) 593-3578

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property.

HEQSP02

©2011 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801.



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265500 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

HELP FOR AMERICA'S HOMEOWNERS.


MAKING HOME AFFORDABLE

October 18, 2013

Loan Number: xxxxxxxxx15650001

KIRK L KERN
JACQUELINE M KERN
16219 CHAMPION DR
SPRING, TX 77379

Dear Borrower(s):

We're responding to your request for mortgage assistance and the options that may be available to help you. We realize that the process can take some time, and we appreciate your patience while we review your options.

### Decision on the federal government's Home Affordable Foreclosure Alternative (HAFA)
We carefully reviewed the information you sent us. At this time, you do not meet the requirements of the Home Affordable Foreclosure Alternative because: you did not provide us with all of the information needed within the required time frame so we cannot offer you a short sale or deed in lieu of foreclosure under HAFA.

Please note: the information above is the primary reason that you are not eligible for mortgage assistance, however there may be other reasons related to the decision. If you have any questions about our decision, please call your Home Preservation Specialist at the number listed at the bottom of this letter.

Although we are not able to help you with the Home Affordable Foreclosure Alternative program, we reviewed your loan for other options and you may be eligible for a proprietary short sale, provided you meet ALL of the following criteria:

1. You have the property listed for sale
2. You maintain the property
3. You can provide potential buyers with a clear title
4. You provide a completed purchase contract that
   a. Is presented in good faith
   b. Presents an arm's length transaction, meaning the parties to the transaction are not related by personal or business relationship.
   c. Names a specific buyer and does not contain an assignment to a different named buyer
   d. Provides a sale price that results in an acceptable minimum net to be determined by Wells Fargo based on an amount equal to the current market value of the property less standard closing costs and commission for the sale.
   e. Clearly states it is a short sale transaction requiring Wells Fargo approval
5. You present all offers to purchase to Wells Fargo for review.

To have the loan reviewed for other loss mitigation options, please contact Wells Fargo Home Equity at 1-866-970-7821, Monday – Friday, 8 am – 5 pm CST

Additional assistance is available
If you would like to seek free assistance from a HUD-approved housing counselor, or seek assistance in understanding this correspondence, please contact the Hotline at 1-888-995-HOPE and ask for MHA HELP.

If you have any questions, or if you are having difficulty reaching your single point of contact, please contact Wells Fargo Home Equity at 1-866-970-7821, Monday-Friday, 8am-5pm CST.
Wells Fargo Home Equity, is a division of Wells Fargo Bank, N.A.
©2013 Wells Fargo Bank. All rights reserved.

HAFA-50001-20131001

Servicemembers Civil Relief
Act Notice Disclosure

U.S. Department of Housing
and Urban Development
Office of Housing

OMB Approval 2502-0584
Exp 11/30/2014

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty.
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within 9 months after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within 9 months after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Please send the notice and military orders to Wells Fargo Bank, Attn: Account Boarding and Modification, MAC B6955-019, 2324 Overland Ave., Billings, MT 59102. Or fax your request to 1-866-359-9068. For questions regarding SCRA please call 1-866-249-5075.
- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php
- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.com/scra or call 1-800-342-9647 (toll free from the Unites States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265501 Total Pages: 2



Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



Wells Fargo Servicing Center
Home Equity Payment Processing
MAC B6955-01B
PO Box 31557
Billings, MT 59107
Wellsfargo.com

December 20, 2013

DCHDECDTFX 003117
||||ı||ıⁿ||ı॥|ı|||||||||ı||||ıॻ||||ı||ı||||||ı||ॻı|
KIRK L KERN
16219 CHAMPION DR
SPRING, TX 77379-6710

Subject:   A new specialist dedicated to helping you

Dear KIRK L KERN ;

I'd like to take this opportunity to introduce myself. My name is Christina Landers, and I'm writing to let you know that going forward, I will be your new Wells Fargo home preservation specialist.

Previously, another specialist was assisting you, and now I'll serve as your dedicated home preservation specialist. In this role, I will be your primary contact, working closely with you and helping you through every step of the home equity assistance process. I'm committed to helping you through the process and making it the best experience possible. That's why I welcome your feedback - whether it's to share something positive, or if you have concerns with something I was not able to help you with. Just let me know, and I'll be happy to put you in touch with my manager.

**How to send documents to me**
You have the option to send information to me either by fax or by secured website.
- By fax, send to: (866) 834-7850, please include your loan number, primary number, secondary number and the date on all documents you send.
- By website: wellsfargo.com/modification, please include your loan number, primary number, secondary number and the date on all documents you send.

You can count on me to keep you well-informed about your account, the process, and next steps. I'm here to help you in any way I can. Please feel free to contact me at the number listed below, with any questions you may have along the way. A representative is available to assist you Monday through Thursday, 7:00 am to 7:00 pm, Friday 7:00 am to 5:00 pm, and Saturday 8:00 am to 5:00 pm Central Time.

I'm pleased to have this opportunity to help you, and look forward to working with you.

Sincerely,
Christina Landers
Home Preservation Specialist
Wells Fargo Home Equity
(866) 992-0948Ext: 80530
Fax: (866) 834-7850

Please note: this letter is being sent in response to your request for assistance. In order to assist you with this request, we must be able to contact you. Therefore, any previous request to cease communication with you has been waived for these purposes. If this is incorrect, please contact us immediately.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property.

HEQSP02

DCHDECDTFX 003117   NNNNNNNNNN NNN NNN 001 002   00S167   1075241211



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265502 Total Pages: 1

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



Home Equity Group
MAC X2303-011 **2018-21484 / Court: 295**
1 Home Campus
Des Moines, IA 50328

| | Contact Information |
|---|---|
| **Fax:** | 1-866-593-3578 |
| **Telephone:** | 1-866-494-4073 |
| **Correspondence:** | PO BOX 10335 |
| | Des Moines, IA 50306 |
| **Hours of operation:** | Mon.–Fri. 7:00 a.m.–7:00 p.m. |
| | Central Time |
| **Loan number:** | xxxxxxxxx15650001 |
| **Property address:** | 16219 CHAMPION DR |
| | SPRING, TX 77379 |

November 09, 2016

PCTHEQCABR 41 000007
KIRK L KERN
JACQUELINE M KERN
16219 CHAMPION DR
SPRING, TX 77379

Subject: Acknowledging receipt of your documentation supporting your request for mortgage assistance

Dear KIRK L KERN and JACQUELINE M KERN:

We're writing to let you know we've received the documentation you sent us supporting your request for mortgage assistance. And thank you for responding to our request.

**What happens next**
We will review the documentation you've submitted. Please keep in mind, there may be additional documents required before we can determine if you're eligible for mortgage assistance. To find out what additional documents we may need from you:

- Refer to the initial package we sent you listing all required documentation, as well as any subsequent correspondence requesting additional documentation.
- Go to **wellsfargo.com/modification** to see what documents we may still need from you. (Please note: For certain loans, online assistance may not be available. If you receive an error message, please call us at 1-866-319-0855.)

**What you need to know about foreclosure for the loan noted above**
We'll continue to work with you to help you avoid a foreclosure sale. If your loan has not previously been referred to foreclosure and you have submitted all of the required documentation needed to evaluate for an alternative, this loan will not be referred to foreclosure while the application is evaluated. If your loan has been referred to foreclosure and you have submitted all required documentation, we will not conduct a foreclosure sale on this loan while your documents are being reviewed and if allowed by state law and/or investor guidelines.

As part of the foreclosure process, you may receive notices from a third-party attorney delivered by mail or see steps being taken to proceed with a foreclosure sale of your home.

Certified Document Number: 79265503 - Page 1 of 2

HEQCABR04 0315
PCTHEQCABR 000007

### I'm here to help you

Please call me at 1-866-494-4073 should you have any questions. If you have questions about the information in this letter, or if you have difficulty reaching me, please contact Wells Fargo at 1-866-319-0855 Monday-Friday, 7:00 a.m. to 7:00 p.m. Central Time. For TDD assistance, please call 1-866-289-2069.

Sincerely,

Home Preservation Team
Home Preservation Specialist
Wells Fargo Home Equity
1-866-494-4073
1-866-593-3578

### Contact us

If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306

The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty, or you are the spouse or financial dependent of a person who has been called to active duty, and you haven't yet made us aware of your status, please contact our Military Customer Service Center at 1-866-936-SCRA (1-866-936-7272) or fax your Active Duty Orders to 1-877-658-4585, attention Special Loans/SCRA.

---

**Get free counseling to help manage expenses and avoid foreclosure**
Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339). You can also call HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo.

---

Where appropriate, Wells Fargo is required by the Fair Debt Collection Practices Act to inform you that, as your account servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you are a customer involved in an active bankruptcy case or you received a discharge in a bankruptcy case where the account was not otherwise reaffirmed or excepted from discharge, then this notice is being provided to you for informational purposes only. THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO ANY SUCH CUSTOMER(S).

We may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

With respect to those accounts secured by property located in the State of California, the state Rosenthal Fair Debt Collection Practices Act requires that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or **www.ftc.gov.**

Wells Fargo Home Equity is a division of Wells Fargo Bank, N.A. © 2015 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801    Equal Housing Lender

HEQCABR04 0315
PCTHEQCABR 000007



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265503 Total Pages:  2

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Wells Fargo Bank, N.A.
MAC N9777-113-HEQ
PO Box 5169
Sioux Falls, SD 57117-5169



October 19, 2017

022127
Kirk L. Kern
Jacqueline M. Kern
16219 Champion Dr.
Spring, TX 77379

| **Account Information** | |
|---|---|
| **Online:**  **Telephone:** | wellsfargo.com  1-866-355-1540 |
| **Correspondence:** | PO Box 10335  Des Moines, IA 50306 |
| **Hours of operation:** | Mon – Thur, 7:00 a.m. – 7:00 p.m.,  Fri, 7:00 a.m. – 5:00 p.m., CT |
| **Loan number**  **(ending in):** | XXXXXX15650001 |
| **Property address:** | 16219 Champion Dr.  Spring, TX 77379 |

Subject: Disaster relief for the account ending in XXXXXX15650001

Dear KIRK L KERN and JACQUELINE M KERN:

We know that your focus right now is protecting the people and things you care for. Our thoughts are with you during this time.

We're reaching out because your area was affected by a FEMA-declared disaster. We understand that you may not be able to make your normal monthly payments at this time. To help, we're providing 90 days of disaster relief for this account. This relief began on the date when FEMA declared your county a disaster area. You can find this date by contacting FEMA at 1-800-621-3362 or online at fema.gov.

**What you need to know**
- During these 90 days, we will not report any negative information for this account to the credit bureaus, and we won't charge late fees. We encourage you to continue making your monthly payments. Even if you're not able to, we want you to know that you're protected with no late fees or negative credit bureau reporting.
- Also keep in mind:
  - This is short-term assistance, and you may need more time to recover. At the end of this disaster relief, we'll work with you to explore solutions to bring your account current, based on your specific financial needs. It is critical that you contact us to discuss options as soon as possible.
  - If you're not able to make payments during this time, your billing statements may reflect that your past payments are overdue. You'll also receive required notices about your payments being overdue. Please rest assured that these mailings won't have a negative effect on your account during this 90-day relief.
  - If after the 90-day relief, you are not able to resume your monthly payments, it is important that you contact us as soon as possible. Late fees and credit reporting will resume if you do not contact us or make your regular payment after the 90 days.

**What you need to do**
- **Please contact our disaster assistance team at 1-866-355-1540.** We want to help.
- **If you're not able to make payments during this time and your payments are automatically withdrawn,** you'll need to cancel or suspend the payments. To adjust automatic recurring payments, contact us to discuss your options. If you use a bill pay or a third-party payment service, contact the service provider directly to make any changes.
- **If your property is damaged,** call us after you file a claim with your insurance company. We'll discuss how we'll be involved in the process to restore your home.
- **When you receive a property insurance repair check,** you'll notice that Wells Fargo is named on it. That's because as the mortgage provider, we work with you to ensure that your property is restored. Call us again as soon as you get your check. Or you can visit our Insurance Claim Check website at insuranceclaimcheck.com. You'll get the information and forms you need to begin repairs as quickly as possible.

- **If you find that your insurance doesn't cover the damage,** please check with FEMA and your state agencies. Additional assistance may be available to you.

**We're here to help**
This is a difficult time, so please count on us to work with you every step of the way. If you have questions about the information in this letter or concerns about your the account, please call us at the number listed in the account information section at the top of this letter.

Sincerely,

*Carmen Bell*

Carmen Bell
Senior Vice President
Wells Fargo Home Equity

Wells Fargo Home Equity is a division of Wells Fargo Bank, N.A.© 2017 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265504 Total Pages:  2

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

# 2018-21484 / Court: 295



February 16, 2018

DCML1TDTPS 002344

ı'ıₗⅡⅡıₗₗⁱₗⁱⁱₗₗⁱⁱₗⁱⁱₗⁱⁱⁱₗₗⁱⁱⁱⁱⁱⁱₗₗₗⁱ'ₗⁱⁱⁱⁱₗⁱⁱⁱⁱₗₗₗⁱⁱₗₗₗⁱⁱⁱₗ



KIRK L KERN
JACQUELINE M KERN
16219 CHAMPION DR
SPRING, TX 77379

## Account Information

| | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | 1-866-359-7363 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Thurs, 7 a.m. - 9 p.m., |
| | Fri, 7 a.m. - 8 p.m., |
| | Sat, 8 a.m. - 4 p.m., CT |
| Loan number: | 0546687898 |
| Property address: | 16219 Champion Dr |
| | Spring TX 77379 |

Subject: Important information about the mortgage and the Servicemembers Civil Relief Act

Dear Kirk L Kern & Jacqueline M Kern:

We're writing to let you know there are past due mortgage payments. By reaching out to us when payment challenges first arise, more options to avoid a foreclosure sale may be available to you.

The following information will help you understand some of the mortgage assistance options that may be available to you, depending on your needs and financial situation.

### Options to keep the home
Reinstatement - Allows you to pay the total amount due, in a lump-sum payment, by a specific date. This allows you to avoid foreclosure sale by bringing the mortgage current.

Forbearance plan - Temporarily suspends or reduces the amount of the regular monthly mortgage payment when a severe or total income reduction occurs. For a specific period of time, this plan can provide short-term mortgage payment relief until you're in a better financial situation.

Repayment plan - Brings the mortgage current. Overdue payments are divided into manageable amounts that are added to the current monthly mortgage payment and spread out over a period of time. By having the overdue mortgage payments divided into manageable amounts, you'll catch up sooner and keep a temporary challenge from having longer-term effects.

Loan modification - The terms of the original mortgage (like the interest rate or number of years allowed for repayment) may be changed, bringing the account up-to-date and making the payments more manageable. By having certain terms of the mortgage modified, the monthly payment may be lowered to an amount that is more manageable for you.

### Options to leave the home
Short sale - Sell the home for less than a full payoff on the account. By doing this, it allows you to transition out of the home without going through the foreclosure process.

DR110 708 0029

Account Information
Loan number:       0546687898

Property address:   16219 Champion Dr
                    Spring TX 77379

Deed in lieu of foreclosure (sometimes referred to as a Mortgage Release) - Voluntarily transfer ownership of the home to us. By doing this, this allows you to transition out of the home without going through the foreclosure process.

## Request for financial information - let us help you today

Call us at 1-800-416-1472 immediately. We are available Monday through Thursday, 7:00 a.m. to 9:00 p.m., Friday, 7:00 a.m. to 8:00 p.m., or Saturday, 8:00 a.m. to 4:00 p.m., Central Time. Right over the phone we'll determine what option is best to help overcome the mortgage payment challenges. We'll need some additional information from you, so please have the following handy when you call:

- The mortgage loan number
- Monthly gross income (before taxes) for each borrower
- Information about any financial hardship
- Monthly expenses

We would also like to notify you of the availability of homeownership counseling, and any rights you or your dependents may have under the Servicemembers Civil Relief Act if you are an active member of one of the military agencies listed below. You may wish to discuss the account with a homeownership counselor.

## Servicemembers Civil Relief Act Notice Disclosure

## United States Department of Housing and Urban Development Office of Housing OMB Approval #2502-0584 Exp. 12/31/2017

### Legal Rights and Protections under the SCRA
- Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. Sections 501-597b) (SCRA).

### Who May Be Entitled to Legal Protections Under the SCRA?
- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard).

- Reserve and National Guard personnel who have been activated and are on Federal active duty.

- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.

- Active servicemembers of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.

- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

DR110 708 0029

Certified Document Number: 79265505 - Page 3 of 4

**Account Information**

| | |
|---|---|
| Loan number: | 0546687898 |
| Property address: | 16219 Champion Dr<br>Spring TX 77379 |

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

o   The SCRA states that, a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6% during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

o   The SCRA states that, in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.

o   The SCRA contains many other protections besides those applicable to home loans.

## How Does a Servicemember or Dependent Request Relief Under the SCRA?

o   In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Attn: Special Loans/SCRA, MAC T7416-01C, PO Box 659810, San Antonio, TX 78265-9110, phone number 1-866-936-7272, or fax to 1-877-658-4585.

o   There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

o   Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php.

o   "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800- 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

## We're here to help

If you have any questions or need additional assistance, please contact us at the number listed in the account information section of this letter.

DR110 706 0029

**Account Information**
Loan number: 0546687898

Property address: 16219 Champion Dr
Spring TX 77379

Home Preservation - Collections Servicing
Wells Fargo Home Mortgage

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include your account number with all correspondence.

**Additional resources**
For additional information about preventing foreclosure, avoiding scams and accessing approved counseling at no cost to you; visit our website listed in the account information box above.

Get free counseling to help manage expenses and avoid foreclosure. Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339). You can also call HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

Where appropriate Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose. However, if you are a customer involved in an active bankruptcy case or you received a discharge in a bankruptcy case where the account was not otherwise reaffirmed or excepted from discharge, then this notice is being provided to you for informational purposes only, and this is not a bill or a request for payment as to any such customer(s).

We may report information about your account to consumer reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2017 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

Certified Document Number: 79265505 - Page 4 of 4

DR11D 708 0029



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265505 Total Pages:  4

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



Wells Fargo
PO Box 10335
Des Moines, IA 50306-0335

March 15, 2018

Kirk L. Kern
Jacqueline M. Kern
16219 Champion Drive
Spring, TX 77379

Subject: Update to the inquiry about account number 0546687898

Dear Mr. Kirk L. Kern and Mrs. Jacqueline M. Kern:

Addressing your concerns is important to us, and we're writing to provide an update on our research into your inquiry.

### Information about your recent inquiry

We want to make every effort to fully address all of your concerns and provide you with a thorough response. It was our goal to respond with our results by March 15, 2018. We now expect to complete our work by March 23, 2018. We appreciate your patience as we finalize our research.

### Going forward

We value your feedback and appreciate the time and effort you took to contact us. If you have any questions while our work is in progress, I'm here to help. You may reach me directly at 1-800-853-8516, extension 1335621187. I am available to assist you Monday through Friday, 8:00 a.m. to 4:30 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

*Kyle Gallinger*

Kyle Gallinger
Executive Resolution Specialist
Customer Care and Recovery Group

Certified Document Number: 79265506 - Page 1 of 1

In order to remain compliant with state and federal guidelines, if you have engaged legal counsel for any litigation, including bankruptcy, we will communicate with them going forward.

EX006/HFI/co5587564/cl708



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 25, 2018

Certified Document Number:        79265506 Total Pages:   1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**