UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIRK L. KERN AND JACQUELINE KERN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-1355 |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion for summary judgment. Dkt. 12. Also pending before the court are Wells Fargo's objections to the summary judgment evidence plaintiffs Kirk L. Kern and Jacqueline Kern (collectively, the "Kerns") submitted in response to Wells Fargo's motion for summary judgment. Dkt. 21. After considering the motions, responses, replies, and applicable law, the court is of the opinion that the motion for summary judgment should be GRANTED and Wells Fargo's objections should be OVERRULED AS MOOT.

### I. BACKGROUND

The Kerns had a mortgage loan with Wells Fargo. Dkt. 12-1 (Exh. A). The Kerns allege that in October 2008, Wells Fargo employees told the Kerns to send half of their monthly payment amount in order to qualify for a loan modification. Dkt. 1-2 at 10; Dkt. 14-1 at 2. From November 2008 to March 2008, the Kerns made their monthly payments on their mortgage but only sent half the amount owed each month. Dkt. 12-5 (Exh. E). In April 2009, the parties entered into a Temporary Modification Agreement. Dkt. 12-8 (Exh. H). The Temporary Modification Agreement reduced the Kerns' monthly payment until April 2010. Dkt. 1-2 at 5; Dkt. 12-9 (Exh. I). From May

2009 through April 2010, the Kerns made payments in accordance with the Temporary Modification Agreement. Dkt. 12-5 (Exh. E).

After the Temporary Modification Agreement period ended, the Kerns made payments in accordance with the original terms from May 2010 to April 2011. *Id.* Beginning in May 2011, the Kerns made no payments to their mortgage loan. *Id.* In July 2011, Wells Fargo sent the Kerns a letter regarding modifications to loans under the Home Affordable Modification Program ("HAMP"). Dkt. 12-11 (Exh. 11). However, the Kerns continued to not make any payments on their mortgage loan, and in August 2011 the Kerns defaulted on their mortgage. Dkt. 12-5 (Exh. E); Dkt. 12-10 (Exh. J).

The Kerns have now sued Wells Fargo for fraud. Dkt. 1-2. The Kerns allege that Wells Fargo: (1) instructed the Kerns to default on the mortgage so that they would be eligible for HAMP eligibility; (2) falsely informed the Kerns several times that Wells Fargo did not have the required documentation for a HAMP application and had the Kerns re-submit their documentation numerous times; (3) made misrepresentations regarding approval of a "temporary modification of their mortgage with reduced 'trial payments' pursuant to" the HAMP program; and (4) omitted the fact it was conducting inspections and charging for those inspections. *Id.* at 10–16.

Wells Fargo has moved for summary judgment on the Kerns' fraud claim. Dkt. 12.

## II. LEGAL STANDARD

### A. Summary Judgment

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for

2

the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## II. ANALYSIS

To prevail on a common law fraud claim, a plaintiff must prove: (1) that a material representation was made; (2) the representation was false; (3) the representation was either known to be false or asserted without knowledge of the truth when made; (4) the representation was intended to be acted upon; (5) the representation was relied upon; and (6) the representation caused injury. *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)). Wells Fargo challenges certain elements for each of the Kerns' fraud allegations.[1] Dkt. 12 at 11–12.

*1.      The Kern's Allegation that Wells Fargo Induced the Kerns to Default*

Wells Fargo argues that the Kerns did not rely on Wells Fargo's representations. Dkt. 12 at 12. Wells Fargo argues that the summary judgment evidence proves that the Kerns defaulted on the loan because they could no longer afford it, not because they relied on alleged misrepresentations from Wells Fargo. *Id.*

---

[1] Wells Fargo also objects to certain evidence raised in the Kern's response. Dkt .21. However, even if the court did consider the evidence that was objected to, summary judgment would still be appropriate.

3

The Kerns argue that Wells Fargo instructed them to make reduced payments in order to be eligible for a loan modification under HAMP. Dkt. 14 at 7. To prove reliance the Kerns point to their own affidavits saying that Wells Fargo told the Kerns to stop making their regular mortgage payments for the full amount. Dkt. 14 at 8. These representations allegedly occurred in 2008. Dkt. 14-1 at 2. Additionally, the Kerns alleged that because of these alleged representations, the Kerns believed they were required to be in default to be eligible for a modification under the HAMP program. Dkt. 14 at 8.

Taking all inferences in favor of the non-movant, at most this testimony creates a genuine issue of material fact as to whether Wells Fargo induced the to default in order to be eligible for the Temporary Modification Agreement in 2009. The affidavits do not help prove that Wells Fargo induced the Kerns to default in order to be eligible for a HAMP modification in 2011, which is what is at issue in this case. Further, the Kerns only allege that Wells Fargo representatives instructed the Kerns to only pay half the amount of their monthly payments in order to be eligible for a modification. Dkt. 14-1 at 2; Dkt. 14-2 at 2. However, after the temporary modification period ended, Plaintiffs made no payments to their mortgage loan. Dkt. 12-5 (Exh. E). Thus, the Kerns defaulted because they made no payments, not because Wells Fargo instructed them to make half their monthly payments. Accordingly, the court GRANTS summary judgment on this allegation.

> 2. *The Kerns' Allegation that Wells Fargo Falsely Represented that the Kerns' Application was Incomplete*

The Kerns also allege that Wells Fargo made misrepresentations regarding their HAMP application. Dkt. 1-2 at 11. According to the complaint, in July 2011, Wells Fargo provided the Kerns with a HAMP application. *Id.* The Kerns allege that they promptly and properly returned the

4

application to Wells Fargo. *Id.* However, the Kerns allege that Wells Fargo repeatedly told the Kerns that they did not have the required documentation and that the Kerns needed to re-submit the application. *Id.*

To support their position, the Kerns point to records of documents submitted and received by Wells Fargo. Dkt. 14 at 8–9. However, the summary judgment evidence provided by the Kerns does not support their allegation that they properly submitted the required documentation for a loan modification under HAMP. The Kerns point to paragraph 7 of their affidavits concerning the Temporary Modification Agreement in 2009. Dkt. 14 at 8; Dkt. 14-1 at 2. This evidence proves only that the Kerns timely submitted the proper documentation regarding the Temporary Modification Agreement in 2009. It does not prove that the Kerns timely submitted the required documentation for the modification sought that is at issue in this case regarding their HAMP Application in 2011.

Next, the Kerns point to evidence that they submitted HAMP documentation on January 30, 2012. Dkt. 14 at 9. However, on September 15, 2011, Wells Fargo sent Mr. Kern a letter that requested documentation from the Kerns within 30 days to help determine if they were eligible for a loan modification under HAMP. Dkt. 14-9. The Kerns' own summary judgment evidence demonstrates that Kerns did not submit the requested information by the October 2011 deadline. Dkt. 12-12. The Kern's own summary judgment evidence undermines their argument that they promptly submitted all the required documentation required for a HAMP modification to Wells Fargo.[2] Accordingly, the court GRANTS summary judgment on this allegation.

---

[2] There is also evidence that the Kerns' modification application was denied because their "current income [was] unable to support a modified payment" at the time, not because Wells Fargo lacked the proper documentation. Dkt. 12-2 at 53.

*3. The Kerns' Allegation that Wells Fargo Made Misrepresentations as to the Temporary Modification and Their Trial Payments*

Wells Fargo also challenges whether it falsely misrepresented that the Kerns were approved for a Temporary Modification. Dkt. 12 at 13. Wells Fargo argues that it never misrepresented the status of the Temporary Modification because the parties actually executed a Temporary Modification in April 2009. Dkt. 12 at 13–14.[3] The court agrees.

There is evidence that the parties engaged in a Temporary Modification Agreement in April 2009. The Modification Agreement provided that "[t]he Bank will reduce the interest rate on the current outstanding balance for a period of 12 months (the 'Modification Period')." Dkt. 12-8 (Exh. H). Thus, the modification period under the Temporary Modification Agreement ended in April of 2010. Dkt. 12-9 (Exh. I). The Kerns have not provided any evidence that Wells Fargo made any misrepresentations regarding their approval for the Temporary Modification in 2009. Accordingly, the court GRANTS summary judgment on this allegation.[4]

---

[3] The Kerns do not directly address Wells Fargo's argument that they did not misrepresent approval of a temporary modification. Instead, the Kerns repeat similar arguments that they repeatedly submitted their modification application documents, stopped making regular mortgage payments, and made trial payments because Wells Fargo employees instructed them to do so. Dkt. 14 at 9.

[4] The Kerns also argue that Wells Fargo made misrepresentations regarding the payments the Kerns made under the modification period because Wells Fargo retained those payments for profit. Dkt. 14 at 9. As evidence, the Kerns point to their affidavits which do not support this allegation. *Id.* However, Wells Fargo provided evidence that the Kern's payments during the modification period were applied to the mortgage's principal balance, not to an "unapplied account for profit." Dkt. 12-5. (Exh. E).

   4.  *The Kerns' Allegation that Wells Fargo Fraudulently Charged the Kerns Inspection Fees*

Finally, in the complaint, the Kerns alleged that Wells Fargo was "conducting unnecessary and improper inspections on their home and charging their account inspection fees." Dkt. 1-2 at 15. According to the Kerns, Wells Fargo applied some of the trial payments to fraudulent inspection fees. *Id.* However, in their response the Kerns assert for the first time that Wells Fargo charged numerous inspection fees for inspections that actually never occurred. Dkt. 14 at 10. They also argued that Wells Fargo applied a portion of the payments the Kerns made during the modification period to the fraudulent inspection fees. *Id.* at 9. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). The Kerns' complaint alleged that inspections had actually occurred, however, in their response, the Kerns now allege that the inspections never actually occurred. Thus, the claim that Wells Fargo charged the Kerns for inspections that did not actually occur and applied a portion of the funds the Kerns paid for "trial payments" is not properly before the court.

Even if the court could consider the Kerns' allegation, this allegation fails. The Kerns have not presented any summary judgment evidence that Wells Fargo improperly charged them inspection fees. The Kerns also did not present any evidence that Wells Fargo did not credit their account when they made payments during the modification period. The Kerns point to a fax where they complain about a payment taken from their checking account that was not applied to their loan in 2006. Dkt. 14 at 9; Dkt. 14-4. However, the alleged missing 2006 payment does not create a genuine issue of material fact as to whether Wells Fargo applied the Kerns' payments made during the

modification period to fraudulent inspections. In fact, there is evidence that the Kern's payments during the modification period were applied to the mortgage's principal balance, not inspection fees. Dkt. 12-5. (Exh. E). Accordingly, the court GRANTS summary judgment on this allegation.

## VI. CONCLUSION

For these reasons, Wells Fargo's motion for summary judgment (Dkt. 12) is GRANTED and Wells Fargo's objections to the Kern's summary judgment evidence (Dkt. 21) are OVERRULED AS MOOT. Because the court is granting summary judgment, the Kerns' request for attorney's fees (Dkt. 1 at 3) is DENIED.

Signed at Houston, Texas on June 28, 2019.

_____
Gray H. Miller
Senior United States District Judge